Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U S  DISTRICT COURT

AUG 2 0 2001

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

LAWRENCE I. WECHSLER,

      Plaintiff,

      v.

MACKE INTERNATIONAL TRADE, INC.,
ANTHONY O'ROURKE and
PETsMART, INC.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 00-00296 CAS (BQRx)

**ORDER CONSTRUING PATENT**

ENTER ON ICMS

AUG 2 1 2001

    Plaintiff Lawrence I. Wechsler has sued defendants Macke International Trade, Inc., Anthony O'Rourke, and PetsMart, Inc., for infringement of U.S. Patent No. 5,636,592 ("the '592 Patent") which describes and discloses a portable device for feeding animals. The parties are presently before the Court for claims construction in accordance with Markman v. Westview Instruments, Inc., 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), aff'g 52 F.3d 967 (Fed. Cir. 1995) ("Markman").

    At issue are claims 1, 5, 6, 15, 16 and 18 of the '592 Patent which provide as follows[1]:

86

---

[1]Although claims 2, 3, 11, 12, 14, 19 and 20 were also the subject of the parties' Joint Claim Construction Statement, the parties agreed at the hearing held on March 23, 2001, that these claims need not be construed.

1

2      1.      A device for feeding animals from a feed material

3  containing reservoir, said device comprising:

4          an open top trough structure providing a pooling

5              space in which feed material can pool; and

6          means for mounting the reservoir on said trough so

7              that it can be mountably moved, while remaining

8              attached to the trough, from a first mounted position

9              thereof wherein it is at least partially nested in said

10             trough pooling space, to at least another mounted

11             position wherein the reservoir is located sufficiently

12             clear of said trough pooling space, so that if a transfer

13             of feed material from the reservoir to the pooling

14             space be effected to pool feed material in the trough,

15             and animal has feeding access to pooled feed material

16             in the trough....

17

18      5.      The device according to claim 1, further comprising:

19  valve means for selectively permitting and terminating a

20          flow of said contents from said reservoir to respectively

21          effect and prevent said transfer.

22

23      6.      The device according to claim 5, wherein:

24  said at least another mounted position includes a second mounted

25          position; and

26  said device further includes means responsive to movement

27          between said first and said at least another mounted position

28          for opening and closing said valve means depending upon a

1     particular reservoir mounted position, said means responsive

2     to movement correspondingly closing said valve means and

3     terminating said flow when in said first mounted position,

4     and opening said valve means and permitting said flow when

5     in said second mounted position....

6

7          15.     A device for feeding animals from a feed material

8     containing reservoir, said device comprising:

9          an open top trough structure providing a pooling space in

10              which feed material can pool;

11         means for mounting the reservoir on the trough so that it can

12              be moved from a first mounted position thereof

13              wherein it is at least partially nested in said trough

14              pooling space to at least another mounted position

15              wherein said reservoir is located clear of said trough

16              pooling space so that if a transfer of feed material

17              from said reservoir to the pooling space be effected to

18              pool feed material in the trough, an animal has

19              feeding access to pooled feed material in the trough;

20              and

21         valve means for selectively permitting and terminating a flow

22              of said contents from said reservoir.

23

24         16.     The device according to claim 15, wherein:

25         said at least another mounted position includes a second

26              mounted position;  and

27         said valve means include means responsive to movement

28              between said first and said another mounted positions

- 3 -

1    for correspondingly terminating said flow when in

2    said first mounted position, and permitting said flow

3    when in said second mounted position....

4

5    18.    A device for feeding animals from a feed material

6    containing reservoir, said device comprising:

7    a trough having an interior surface defining a pooling space;

8    means for movably mounting the reservoir to said trough,

9    said means for mounting including means for

10    allowing movement between first and second

11    mounted positions, the reservoir and said trough

12    remaining attached during said movement;

13    said interior surface suitably shaped for receiving said

14    reservoir in at least partial nesting relationship

15    therewith when in said first mounted position;

16    said reservoir being clear of said trough when said device is

17    oriented in said second mounted position; and

18    means for directing an induced flow of said contents from

19    said reservoir into said pooling space when in said

20    second mounted position....

21

22    In particular, the parties seek to have the Court construe the phrases "means for mounting

23    the reservoir on [the] trough" set forth in claims 1 and 15; "so that it can be mountably moved,

24    while remaining attached to the trough" contained in claim 1; "valve means for selectively

25    permitting and terminating a flow" contained in claims 5 and 15; "means responsive to

26    movement...for opening and closing said valve means" contained in claim 6; "so that it can be

27    moved from a first mounted position thereof...to at least another mounted position" contained in

28    claim 15; "means responsive to movement between said first and second mounted positions for

- 4 -

1  correspondingly terminating said flow...and permitting said flow" contained in claim 16; and

2  "means for movably mounting the reservoir to said trough" contained in claim 18.[2]

3      The parties have offered different proposed constructions of the disputed claims.  The

4  essence of the dispute is three-fold:  First, plaintiff contends, relying particularly on claim 15,

5  that the reservoir and the trough on the patented device need not be continuously attached in the

6  mounted positions specified in the embodiment of the patented devices.  Defendants dispute this

7  construction, arguing that plaintiff is precluded from advancing this construction both by the

8  embodiment of the device as disclosed in specifications and by the prosecution history.  Second,

9  plaintiff contends that the claims must be construed to cover the transfer of feed material from

10  the reservoir to the trough through any kind of valve.  Defendants argue to the contrary, asserting

11  that the valve contemplated by the patent must be limited to the valve means disclosed in the

12  specifications.  Third, according to defendant PetsMart, Inc., the term "feed material" should not

13  be construed to include water.  Plaintiff disputes this construction based upon the preamble to the

14  '592 Patent.

15      Claims contained in a patent must be analyzed utilizing the claim language, the patent

16  specification, and the prosecution history.  See, e.g., Markman, 52 F.3d at 979 (citing Unique

17  Concepts, Inc. v. Brown, 939 F.2d 1558, 1561 (Fed. Cir. 1991)).  Each claim of a patent must be

18  interpreted consistently, and each claim must be given meaning.  See Georgia-Pacific Corp. v.

19  United States Gypsum Co., 195 F.3d 1322 (Fed. Cir. 1999).  Disputed claim terms are given their

20  ordinary and customary meaning, unless (1) a different meaning is clearly set forth in the written

21  description or the prosecution history; or (2) the term chosen lacks clarity such that there is no

22  means by which the scope of the claim may be ascertained solely from the language used.  See

23  

24      [2]For purposes of these proceedings the parties agree as to the meaning of the terms
"reservoir", "trough", "pooling space" and "it" and "thereof".  See Joint Claim Construction

25  Statement (hereafter "Joint Claim Constr. Stm.") at 2.  In particular the term "reservoir", used in
claims 1, 2, 3, 5, 6, 14, 15, 18, 19 and 20, refers to a structure, such as, for example, a bottle, for

26  holding feed material.  The term "trough", used in claims 1, 11, 12, 14, 15, 18 and 20, refers to a
structure with a concave interior from which an animal can consume feed material.  The term

27  "pooling space", used in claims 1, 2, 3, 15, 18 and 19, refers to the interior of the trough.  The terms

28  "it" and "thereof" used in claims 1 and 15, refer to the reservoir.

- 5 -

1   Johnson Worldwide Assoc., Inc. v. Zebco Corp., 175 F.3d 985, 989-90 (Fed. Cir. 1999);

2   Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996).

3          Except for the question of whether the term "valve means" invokes a means-plus-function

4   analysis, the parties agree that the other claims that are presently before the Court are in means-

5   plus-function format, and are to be construed pursuant to 35 U.S.C. §112 ¶6, which provides as

6   follows:

7                    An element in a claim for a combination may be expressed as a

8                    means or step for performing a specified function without the

9                    recital of structure, material, or acts in support thereof, and such

10                   claim shall be construed to cover the corresponding structure,

11                   material, or acts described in the specification and equivalents

12                   thereof.

13   The Federal Circuit has identified certain principles to be employed in construing means-plus-

14   function claims.  First, 35 U.S.C. § 112 requires that the court look to corresponding structures

15   disclosed in the specification to interpret the meaning of a means-plus-function element in a

16   claim.  This is a statutory exception to the general rule that limitations from the specification

17   cannot be read into the claims.  Kahn v General Motors Corp., 135 F.3d 1472, 1476 (Fed. Cir.

18   1998).  The rationale for the exception is that the means-plus-function provision "represents a

19   quid pro quo by permitting inventors to use a generic means expression for a claim limitation

20   provided that the specification indicates what structure(s) constitute(s) the means." Atmel Corp.

21   v. Information Storage Devices, Inc., 198 F.3d 1374, 1381 (Fed. Cir. 1999).  Further, the Federal

22   Circuit has held that where the word "means" is used, does not necessarily invoke the claim

23   construction rule of § 112 ¶6, the presumption that an element is a "means-plus-function"

24   element may only be overcome if the claim recites sufficient structure to perform the claimed

25   function.  Envirco Corp. v. Clesta Cleanroom, Inc., 209 F.3d 1360, 1364 (Fed. Cir. 2000).  When

26   § 112 ¶ 6 applies, the claim term or limitation must be construed to cover only the corresponding

27   structure described in the specification.  That is to say, "means" language in a means-plus-

28   function element is in the nature of a generic reference to the corresponding structure disclosed in

1    the specification for performing the function recited in the means element. <u>Chiuminatta Concrete</u>

2    <u>Concepts, Inc. v. Cardinal Industries, Inc.</u> 145 F.3d 1303, 1308 (Fed. Cir. 1998). Where more

3    than one structure is disclosed in the specification for performing the recited function under

4    § 112 ¶ 6, the court is only required to identify those structures. It is not required to formulate a

5    single claim construction to cover all of those multiple embodiments. <u>Ishida Co. v. Taylor</u>, 221

6    F.3d 1310, 1316 (Fed. Cir. 2000). For a means-plus-function limitation to cover a particular

7    corresponding structure in the specification, the corresponding structure must be adequately

8    described and linked to the recited function. Whether a structure had been sufficiently disclosed

9    to support a means-plus-function limitation is determined by whether one skilled in the art would

10   know and understand what structure corresponds to the means limitation. <u>Atmel Corp. v.</u>

11   <u>Information Storage Devices, Inc.</u>, <u>supra</u> at 1382. Finally, the Federal Circuit "has specifically

12   cautioned against reading means-plus function limitations to cover all possible means that

13   perform a recited function." <u>Biodex Corp. v. Loredan Biomedical, Inc.</u>, 946 F.2d 850, 863 (Fed.

14   Cir. 1991).

15         With these principles in mind, the Court proceeds to construe the claims that are here at

16   issue.

17

18   **I.      Whether the Reservoir and the Trough Must Be Continuously Attached**

19   a. Claims 1, 5 and 18: "means for mounting the reservoir on said trough"

20         Plaintiff contends that:

21              This portion of claim 1 and claim 15 recites a structural

22         adaptation permitting the joining of a reservoir to a trough as

23         establishing a condition of securement one to another.

24              Joint Claim Constr. Stm. at 3.

25

26   Defendants assert that the "means for mounting" language must be construed as

27   follows:

28         (l) by reference to the two embodiments of Figs. 1a-3b and

- 7 -

Figs. 4a-7c, respectively, as a coupling assembly 1 or 21 having a threaded screw portion 5 or 25 threadedly connected to the reservoir 2 and a pair of shaft stubs 7a, 7b or flanges 27 extending outwardly and engaging a pair of holes 9a, 9b or 29, respectively, and

(2)  by reference to the embodiment of Figs. 10a through 11b, as a coupling assembly 51 having a threaded screw portion 55 threadedly connected to the reservoir 2 and hinge elements 57a and 57b on the coupling assembly 51 and trough 58, respectively, whereby the reservoir remains connected to the trough continuously when moved between the two mounted positions.

Joint Claim Constr. Stm. at 9-10.

b.  Claim 1: "so that it can be mountably moved while remaining attached to the trough"

Plaintiff contends :

This portion of claim 1 recites a condition by which the reservoir and the trough remain attached in a joined relationship while being moved between various positions."

Joint Claim Constr. Stm. at 3.

Defendants appear to maintain that the above-quoted language found in claim 1 requires that the  reservoir and trough be continuously connected when moved between the two mounted positions and that this limitation applies to claim 15 even though claim 15 does not contain the language "so that it can be mountably moved, while remaining attached to the trough."

c.  Claim 15: "so that it can be moved from a first mounted position thereof...to at least another mounted position"

Plaintiff contends as follows:

This recitation in Claim 15, defines structure which permits

reorientation of the reservoir from one position, in which it at least

partially nests in the trough, to at least one other position relative to

the trough in which the reservoir is clear of the trough for active use.

The recited structure requires that structure be provided which

permits mounting of the reservoir to the trough in both relative

positions, but does not infer any limitation that the reservoir bottle be

"pivotably movable with respect to the trough," nor does it require

that the reservoir remain "attached to the trough throughout all

movements therebetween during use,"

    Joint Claim Constr. Stm. at 5.

Defendants assert that claim 15 should be construed in the following manner:

    (1) by reference to the two embodiments of Figs. 1a-3b and

    Figs. 4a-7c, respectively, as a coupling assembly 1 or 21

    having a threaded screw portion 5 or 25 threadedly connected

    to the reservoir 2 and a pair of shaft stubs 7a, 7b or flanges 27

    extending outwardly and engaging a pair of holes 9a, 9b or 29,

    respectively, and

    (2) by reference to the embodiment of Figs. 10a through 11b,

    as a coupling assembly 51 having a threaded screw portion 55

    threadedly connected to the reservoir 2 and hinge elements

    57a and 57b on the coupling assembly 51 and trough 58,

    respectively,

whereby the reservoir remains connected to the trough continuously

when moved between the two mounted positions.

    Joint Claim Constr. Stm. at 18

- 9 -

d.  Claim 18: "means for movably mounting the reservoir to said trough"

Plaintiff contends that this language contained in Claim 18:

> this recites a structural adaptation permitting the joining of the reservoir to the trough as establishing a condition of securement one to the other which permits movement between at least two mounted positions.

Joint Claim Constr. Stm. at 6

According to defendants:

> [t]he above-quoted MEANS FOR MOUNTING is construed for each claim;
>
> (1)  by reference to the two embodiments of Figs 1a-3b and Figs. 4a-7c, respectively, as a coupling assembly 1 or 21 having a threaded screw portion 5 or 25 threadedly connected to the reservoir 2 and a pair of shaft stubs 7a, 7b or flanges 27 extending outwardly and engaging a pair of holes 9a, 9b or 29, respectively, and
>
> (2)  by reference to the embodiment of Figs. 10a through 11b, as a coupling assembly 51 having a threaded screw portion 55 threadedly connected to the reservoir 2 and hinge elements 57a and 57b on the coupling assembly 51 and trough 58, respectively,
>
> whereby the reservoir remains connected to the trough continuously when moved between the two mounted positions

Joint Claim Constr. Stm. at 22.

- 10 -

1    Defendants assert that their construction is supported by the embodiments and the

2  prosecution history.  In this regard, defendants argue that in the embodiments of the device  "the

3  reservoir remains connected to the trough continuously when moved between the two mounted

4  positions."  Joint Claim Constr. Stm. at 10.

5    In addition, defendants point to the prosecution history of the '592 Patent to demonstrate

6  the propriety of their construction.  In plaintiff's initial patent application, filed on June 7, 1995,

7  plaintiff claimed in claims 1 and 2 (the respective ancestors of claims 1 and 15 now before the

8  court) were:

9    1.  A device for feeding animals from a feed material

10    containing reservoir, said device comprising:

11    an open top trough structure providing a pooling space in

12    which feed material can pool; and

13    means for mounting the reservoir on the trough so that it

14    can be moved from a first mounted position thereof wherein it is at

15    least partially nested in said trough pooling space to another

16    mounted position wherein said reservoir is located clear of said

17    trough pooling space so that if a transfer of feed material from said

18    reservoir to the pooling space be effected to pool feed material in

19    the trough, an animal has feeding access to pooled feed material in

20    the trough.

21

22    2.  The device according to claim 1, further comprising:

23    valve means for selectively permitting and terminating said

24    flow of said contents from said reservoir.

25    Exh. 2 at 30.

26

27  Claim 2 was rejected, and plaintiff thereafter amended claim 2 with the following

28  explanation:

- 11 -

1    Claims 2-4 have been held to contain allowable subject

2    matter, and would be allowable if the rejection under 35 U.S.C.

3    § 112, second paragraph were overcome, and the claims rewritten

4    to include the limitations of the base claim and any intervening

5    claims. Claim 2 has been rewritten in independent form, and

6    includes all limitations of claim 1 from which it formerly

7    depended. As noted earlier, the bases for the Section 112

8    rejections have been addressed herein. Claim 3 has been amended

9    to depend from claim 2, rather than claim 1, and is therefore

10    allowable, as is claim 4 which depends from claim 3.

11

12    Claims 5 and 6 are rejected under 35 U.S.C. § 103 as being

13    unpatentable over Liggett in view of Bradley. Claims 5 and 6

14    depend either directly or indirectly from independent claim 7, and

15    should derive patentability at least in part therefrom, as well as for

16    the additional recitations they contain. As noted above with regard

17    to the Section 102 rejection, claim 7 requires that the reservoir be

18    moveable between first and second mounted position while

19    *remaining attached to the trough.* Teaching of this important

20    feature is absent from both cited references, and therefore such

21    recitation would not have been obvious to one possessed of

22    ordinary skill in the art. Inclusion of such feature permits a feeder

23    device structure which may be carried to, and used at, remote

24    locations, while providing more convenient handling by remaining

25    in a continually attached condition during mounted movement of

26    the reservoir with respect to the trough. It is therefore respectfully

27    requested that the rejection of claims 5 and 6 under Section 103 be

28    withdrawn.

1    Exh. 2 at 66-67. (Emphasis in the original.)

2          There appears to be no dispute that Claim 1 requires that the trough and reservoir be

3    continuously attached. Plaintiff urges, however, that because Claim 15 does not expressly

4    require that they be continuously attached, the '592 Patent should be construed to cover devices

5    as to which the trough and reservoir do not remain continuously attached. Defendants argue that

6    the requirement that the reservoir be moveably mounted to the trough necessitates a contrary

7    conclusion, and further urge that the prosecution history of the '592 Patent estops plaintiff from

8    contending that claim 15 does not require continuous attachment.

9          The Court concludes that the construction offered by defendants is correct, in that the

10   language of Claim 15, the embodiments of the patent, and the prosecution history all suggest that

11   the '592 Patent envisioned that the trough and reservoir be continuously attached. First, the

12   language "mountably moved" in Claim 1 suggests continuous attachment. Second, the various

13   embodiments of the '592 Patent, e.g., Figs 1a-3b , Figs 4a-7c and Figs. 10a-11b all suggest that

14   the reservoir and trough are to be continuously attached. In this regard, the Specification

15   discloses two corresponding structures for the recited "means for mounting" elements. Both

16   structures disclose mountings that enable rotational movement of the reservoir around the pins.

17   Plaintiff seeks to differentiate claim 15 by arguing that the references to a "slide mechanism" and

18   to "any one, or a combination of slidable, hingable, and other relative motion to accomplish

19   suitable relative positioning..." in the Disclaimer section ('592 Patent, col. 12, lns. 1-33) of the

20   specification disclose another "means for moveably mounting: the reservoir on the trough.

21   However, as defendants argue, there is no structure disclosed for the slide mechanism which

22   plaintiff claims discloses a distinct means for moveably mounting that does not require

23   continuous attachment.

24         Further, plaintiff's reliance on the doctrine of claims differentiation is misplaced. While

25   differences in language between two claims in a patent are presumed to have meaning, this

26   doctrine does not override the statutory requirements of 35 U.S.C. § 112. See Multiform

27   Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1480 (Fed. Cir. 1998) (the doctrine of claim

28   differentiation cannot be used to broaden claims beyond their correct scope).

1   Finally, given the prosecution history of the '592 Patent, discussed above, it appears that

2   plaintiff is estopped to disclaim continuous attachment.  For these reasons the Court finds that

3   continuous attachment of the reservoir and trough is a limitation on the scope of the '592 Patent.

4   **II.    Whether the Embodiments of the Valve Permitting and Terminating the**

5   **Flow of Liquid Serve to Limit the Scope of the '592 Patent**

6   The parties next dispute whether the term "valve means" is limited by the language of the

7   patent and the configurations thereof.  Plaintiff contends that the word "valve" in Claims 5 and

8   15 recites structure, and requires no interpretation pursuant to § 112 ¶6.  Defendants argue to the

9   contrary, asserting that by virtue of § 112 ¶6, the specifications of the valve serve to limit the

10   patented device to one with either a push-pull type valve (Figs. 1a-3b and Figs 10a-11b) or a

11   rotary type valve (Figs. 4a-7c) which support two equally applicable constructions of the claim..

12   Defendants further assert that their proposed construction of the clause "valve means for

13   selectively permitting and terminating a flow" is an appropriate means-plus-function

14   interpretation that encompasses the two valve embodiments disclosed in the specification and

15   structural equivalents.  The precise contentions of the parties are set forth below.

16   a. Claims 5 and 15: "valve means for selectively permitting and terminating a flow"

17   Plaintiff contends:

18   This portion of claim 5 and claim 15 refers to a device for

19   controlling passage of a flowable material from a space on one side

20   of the device to space on the other side.  This is in accordance with

21   the generally accepted meaning of a valve which is defined as "any

22   device for controlling the flow of a fluid".  The Random House

23   College Dictionary - Revised Edition, p. 1453, (1988).

24

25   This claim element does not require 35 U.S.C. §112 ¶ 6

26   treatment, since the claim already recites sufficient structure, i.e. a

27   "valve".  See Cole v. Kimberly-Clark Corp. 102 F.3d 524 (Fed. Cir.

28   1996); and Envirco Corp. v. Clestra Cleanroom, Inc., 209 F.3d 1360

- 14 -

(Fed. Cir. 2000).

Joint Claim Constr. Stm. at 4.

Defendants contend that the claims language should be construed as follows:

(1) by reference to the two embodiments of Figs. 1a-3b and Figs. 10a-11b, respectively, as valve 4 or 54 having a nozzle portion 4a opening and closing passages 12a on a hollow shaft 5a on the cap portion 5 of coupling assembly 1 by sliding the valve 4 forward and back on shaft 5a; and

(2) by reference to the embodiment of Figs. 4a-7c, as a rotational stop cock valve 24 having a cylindrical valve member 24b rotatably mounted in a valve body 24a that has a valve bore 32a therethrough so that a bore 32b in the valve member 25b is aligned with the bore 32a to open valve 24 and misaligned with bore 32a to close valve 24 by rotating valve member 24b relative to valve body 24a;

whereby there is a mechanical structure selectively movable by hand between (1) an open condition that causes the free flow of water that is above the VALVE MEANS from the reservoir into the trough and (2) a closed condition that prevents any flow of water from the reservoir.

Joint Claim Constr. Stm. at 13-14.

b. Claim 6: "means for opening and closing said valve means"

Plaintiff contends:

- 15 -

1    This portion of claim 6 recites structure which brings about

2    a respective closing and opening of the valve in response to a

3    physical repositioning of the reservoir relative to the trough from

4    the nested position to the active use position.  The specification of

5    the '592 Patent discloses structure consisting of "a valve...which is

6    automatically activated by the action of [moving] the bottle relative

7    to the trough."  '592 Patent, col. 2, lines 59-61.  The specification

8    further discloses that such "moving" can be by "pivoting",

9    "sliding", "or other relative motion", or a combination thereof. '592

10   Patent, col. 12, lines 12-27.

    Joint Claim Constr. Stm. at 4-5.

11

12

13   Defendants assert that this language in claim 6 should be construed as follows:

14

15       The stop cock or rotary type valve 24 having a

16   cylindrical valve member 24b mounted in a valve body 24a and a

17   pair or rectangular flanges 27 on valve member 24b engaging a pair

18   of rectangular holes 29 in trough 8 that hold valve member 24b

19   stationary;

20

21   whereby there is a mechanical structure that interconnects the

22   trough to a rotary valve on the reservoir so that the pivotal

23   movement of the reservoir relative to the trough rotates the valve for

24   closing the rotary type valve in the first mounted position and

25   opening the rotary type valve in  the second mounted position

26   without any additional manipulation [of] any other elements.

    Joint Claim Constr. Stm. at 15.

27

28

- 16 -

1     c. Claims 6 and 16: "means responsive to movement between said first and second

2 mounted positions for correspondingly terminating said flow...and permitting said flow."

3          Plaintiff asserts that:

4                    In claim 16, this recites structure which brings about a

5          respective closing and opening of the valve in response to a physical

6          repositioning of the reservoir relative to the trough from the nested

7          position to the active use position.  The specification of the '592

8          Patent discloses structure consisting of "a valve...which is

9          automatically activated by the action of [moving] the bottle relative

10         to the trough." '592 Patent, col. 2, lines 59-61.  The specification

11         further discloses that such "moving" can be by "pivoting", "sliding",

12         "or other relative motion" of a combination thereof. '592 Patent, col.

13         12, lines 12-27.

14                    Joint Claim Constr. Stm. at 6

15         Defendants disagree, and urge the following construction:

16                    The stop cock or rotary type valve 24 having a cylindrical

17         valve member 24b mounted in a valve body 24a and a pair of

18         rectangular flanges 27 on valve member 24b engaging a pair of

19         rectangular holes 29 in trough 8 that hold valve member 24b

20         stationary;

21

22         whereby there is a mechanical structure that interconnects the

23         trough to a rotary valve on the reservoir so that the pivotal

24         movement of the reservoir relative to the trough rotates the valve for

25         closing the rotary type valve in the first mounted position and

26         opening the rotary type valve in the second mounted position

27         without any additional manipulation any other elements.

28

- 17 -                      S:\Orders\CIVIL\2000\00-00296.1.wpd

1                          Joint Claim Constr. Stm. at 20.

2        The Court concludes that the term "valve " should be construed pursuant to §112 ¶6.

3 First, the use of the term "means" generally shows that the patent applicant has chosen the option

4 of the means-plus-function format invoking § 112 ¶6 construction.  Greenberg v. Ethicon Endo-

5 Surgery, Inc., 91 F.3d 1580, 1584 (Fed. Cir. 1996).  In Unidynamics Corp. v. Automatic Products

6 Int'l, Ltd., 157 F.3d 1311 (Fed. Cir. 1998),  where the means-plus-function element at issue was

7 "spring means tending to keep the door closed," the Federal Circuit expressly distinguished Cole

8 v. Kimberly-Clark Corp., the case relied upon by plaintiff, stating as follows:

9                We held [in Cole] that the perforation did not meet the requirement of

10                §112¶6 because it not only described definite structure, perforations, that

11                supported the described function, tearing, but also described the location

12                and extent of the structure.  Here, spring is the only recitation of structure

13                with the remainder pertaining solely to the function of the means

14                limitation. 157 F.3d at 1319.

15 Assuming the specification serves to define the valve, it is apparent from figs. 1a-3b and 10a-11b

16 that the valve is either a push-pull valve or a stop cock valve.  Any broader definition of a valve

17 appears to be inconsistent with the interpretation required by §112 ¶6.  See also Utah Medical

18 Products, Inc. v. Clinical Innovations Associates, Inc., 79 F. Supp. 2d 1290, 1306 (D. Utah

19 1999) (holding that the term "valve means" requires means-plus-function analysis under § 112

20 ¶6).  Moreover, as in Unidynamics, the written description, namely, "valve means for selectively

21 permitting or terminating a flow" supports the conclusion that the means-plus-function analysis

22 applies to this case.

23

24 **III.    The Nature of the Feed Material**

25        Although not briefed by the parties, at the hearing held on March 23, 2001, counsel for

26 defendant PETsMART, INC. first argued another limitation on the '592 Patent, namely, that the

27 claimed invention should be construed as not providing for the transmission of water.  The

28 apparent basis for this belated argument is that the claims refer to "feed material" and not water.

1 However, the first paragraph of the preamble to the '592 Patent in relevant part describes the

2 invention as "a device which is used for dispensing water, potable liquids, granulated solids, or

3 other flowable consumables from a reservoir into a pooling region for consumption thereof."

4        At issue is whether this language in the preamble may be considered in construing the

5 patent.  The general rule appears to be that if the body of the claim fully sets forth the complete

6 invention, and the words of the preamble merely state the purpose or intended use of the

7 invention, the preamble does not limit the scope of the claim.  However, if the claim preamble

8 recites limitations of the claim or if the claim preamble is necessary to give life to the claim, the

9 preamble should be construed as if in balance of the claim.  Pitney Bowes, Inc. v. Hewlett-

10 Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999).  Here the claims of the '592 Patent do not

11 refer to "water" but rather to "feed material."  The term "feed material" as used in the claims

12 plainly includes liquids, in that the patented device has a valve through which the feeding

13 material flows into a so-called "pooling space" or "reservoir."  It appears to the Court that the

14 preamble words give "life and meaning" to the claims.  See General Elec. Co. v. Nintendo Co.,

15 179 F.3d 1350, 1361 (Fed. Cir. 1999).  Given this description, and the fact that water may be

16 deemed to be a type of feed material, as well as a type of potable  liquid and flowable

17 consumable, there appears to be no sound basis for limiting the '592 Patent in the manner argued

18 for by PETsMART, INC.

19        IT IS SO ORDERED.

20 Date:    August 17, 2001

21

22                       _Christina A. Snyder_

23                       CHRISTINA A. SNYDER
                      United States District Judge

24

25

26

27

28