Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___





UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LAWRENCE I. WECHSLER, | Case No. CV 00-00296-CAS |
| Plaintiff, | |
| vs. | ORDER GRANTING SUMMARY JUDGMENT |
| MACKE INTERNATIONAL TRADE, INC.; ANTHONY O'ROURKE; and PETsMART, INC., | |
| Defendants. | THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

## I. INTRODUCTION

Plaintiff Lawrence I. Wechsler is the inventor of the Portable Device for Feeding Animals, for which he owns U.S. Patent No. 5,636,592 ("the '592 patent"), issued June 10, 1997. Plaintiff alleges that defendants Macke International Trade, Inc. ("Macke"), Anthony O'Rourke, Macke's President and Secretary, and PetsMart, Inc. ("PetsMart"), have infringed the '592 patent by making, using, and selling in the United States two different products, the Handi-Drink and the Handi-Drink 2 (the "HD" and the "HD2", respectively).

S:\Orders\CIVIL\2000\00-00296.SJ.wpd

The Handi-Drink products are portable water dispensing and drinking devices for animals, with HD being the original device and HD2 being a second model of the device with some differences in features, structure, and functions. Plaintiff filed a First Amended Complaint ("FAC") on May 8, 2000, asserting claims against all defendants for infringement in violation of 35 U.S.C. §271(a), and against O'Rourke and Macke for inducing infringement pursuant to 35 U.S.C. §271(b). Following a March 23, 2001 hearing in accordance with <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996), the Court issued an Order Construing Patent ("Order") on August 20, 2001. Subsequently, on October 30, 2001, the Court issued an Order Construing Additional Portions of Claims 1 and 18 ("Additional Order"). The parties are now before the Court on defendants' motion for summary judgment of noninfringement, filed December 21, 2001.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the

pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In patent cases, as in other cases, summary judgment is appropriate where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. See Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 795 (Fed. Cir. 1990). Determining whether an accused device infringes a patent claim involves two steps: (1) "claim construction, which involves ascertaining the scope and meaning of the claims at issue;" and (2) "determining whether the claims as construed read on the accused device." See Streamfeeder, LLC v. Sure-Feed Sys., Inc., 175 F.3d 974, 981 (Fed. Cir. 1999). Construction of patent claims is decided as a matter of law. See Markman, 517 U.S. 370 (1996). Infringement, either literal or under the doctrine of equivalents, presents a question of fact. See Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).

### III. DISCUSSION

As a preliminary matter, the parties agree that of the asserted claims, only claims 1, 15, and 18 are independent claims, with the remaining claims being dependent as to one of those three claims.[1]

---

[1] Plaintiff alleges that the HD infringes claims 1, 2, 3, 5, 6, 11, 12, 14, 15, 16, 18, 19 and 20 of the '592 patent, while the HD2 (continued...)

Because a dependant claim cannot be infringed if the independent claim on which it depends is not infringed, defendants' motion for summary judgment of noninfringement specifically considers claims 1, 15, and 18. <u>See</u> Defendants' Memorandum in Support of Motion for Summary Judgment of Noninfringement of U.S. Patent No. 5,636,592 ("Mot.") at 1.

Direct infringement of a patent may be literal or may be found under the doctrine of equivalents. Plaintiff asserts that the HD infringes claims 1, 5, and 18 of the '592 patent and that the HD2 infringes claim 15 of the '592 patent, both literally and under the doctrine of equivalents. In addition, in order to demonstrate contributory infringement, plaintiff must first show direct infringement of the patent. <u>See, e.g.</u>, <u>Aro Mfg. Co. v. Convertible Top Replacement Co.</u>, 365 U.S. 336, 340-41 (1961).

A. <u>Literal Infringement</u>

In order to demonstrate literal infringement, the patentee must "prove that the accused device contains each limitation of the asserted claim(s)." <u>Bayer AG v. Elan Pharmaceutical Research Corp.</u>, 212 F.3d 1241, 1247 (Fed. Cir. 2000) (citing <u>Mas-Hamilton Group v. LaGard, Inc.</u>, 156 F.3d 1206, 1211 (Fed. Cir. 1998)). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." <u>Id.</u> Although infringement is generally a question of fact, summary judgment may be appropriate when "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the

---

(...continued)
infringes only claims 15 and 16. <u>See</u> Plaintiff's Response to Interrogatories 1 and 2 (Solum Dec., Ex 4.)

accused device." Bai, 160 F.3d at 1353. Defendants assert that the HD2 does not include the "means for mounting," and that neither the HD nor the HD2 include the "valve means" required by claims 1, 15, and 18 of the '592 patent, and that as a result defendants have not literally infringed the '592 patent. Mot. at 6.

The Court previously determined that both the "means for mounting" and "valve means" limitations in claims 1, 15 and 18 are elements in the combination "expressed as a means . . . for performing a specified function" under 35 U.S.C. §112, ¶6. See Order at 6, 18. Therefore, the means-plus-function elements of the claims "shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." 35 U.S.C. §112, ¶6. To infringe a claim having means-plus-function elements, (1) the defined function must be performed (2) by a structure set forth in the patent specification for performing that function or "equivalents" of that structure. See Chiuminatta Concrete Concepts v. Cardinal Industries, Inc., 145 F.3d 1303, 1307-08 (Fed. Cir. 1998); see also Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1388-89 (Fed. Cir. 1992)("Under 35 U.S.C. § 112, ¶ 6, to satisfy a means-plus-function limitation literally, the accused device must perform the identical function required by the limitation and must incorporate the structure disclosed in the specification, or its substantial structural equivalent, as the means for performing that function.") (citations omitted).

1. "Means for Mounting"

Defendants contend that the HD2 does not infringe the '592 patent because it omits the "means for mounting" the reservoir on

the trough, which is a limitation in claims 1, 15, and 18.[2] Mot. at 10. In its Order, the Court construed the "means for mounting" element and found that "continuous attachment of the reservoir and the trough is a limitation on the scope of the '592 patent." Order at 14.

Defendants state that the HD2 reservoir does not remain continuously attached to the trough when moved between the storage and dispensing positions. Mot. at 13. Examination of the HD2 reveals that the reservoir portion (the water bottle) must be disconnected and removed from the trough for moving between the storage and dispensing positions, and vice versa. See Mot., Physical Ex. 3 (the HD2). Defendants argue that because the reservoir of the HD2 does not remain "connected to the trough continuously when moved between the two mounted positions," Order at 8, or contain an equivalent structure, the HD2 does not literally infringe the "means for mounting" element of asserted claims 1, 15 and 18 of the '592 patent.

In response, plaintiff admits that while the "means for mounting" utilized in the HD2 is not identical to the "means for mounting" limitation in the '592 patent, it is the "equivalent" thereof under 35 U.S.C. § 112, ¶6.[3] Plaintiff's Memorandum of Law in

---

[2] Defendants note that the Court construed claims 1, 15 and 18, each of which has a "means for mounting" element. Mot. at 10. However, because defendants contend that only the HD2 omits this element, and because plaintiff has not asserted that the HD2 infringes claims 1 and 18, defendants state that their analysis of the "means for mounting" infringement by the HD2 focuses on claim 15. Mot. at 10-11.

[3] Plaintiff also argues that he written description requirement of 35 U.S.C. § 112, ¶1 supports a new construction of the "means for mounting" requirement. See Opp. Mot. at 11-15. However, an Opposition
(continued...)

Opposition to Motion for Summary Judgment of Noninfringement ("Opp. Mot.") at 16-17. Plaintiff argues that the mounting structure used in the HD2 performs the identical function to the claimed means limitation, i.e., "mounting of the reservoir to the trough in a nested position and alternate mounting of the reservoir in a use position when reoriented," id. at 17, in a means insubstantially different from the structure described in the '592 patent. In support of this argument, plaintiff submits a declaration from expert Henry Keck in which Keck states that the means for mounting found in the HD2 is a known equivalent to the hinging/pivoting attachment illustrated in the '592 patent.[4] Keck Dec. ¶¶ 9, 10.

However, Keck does not reference the Court's prior construction of the claims at issue, and plaintiff appears to be attempting to have the Court reconsider its claims construction in order to broaden the scope of the claim so that the "means for mounting" used in the HD and the HD2 are equivalent to the "means for mounting" described in the '592 patent. The Court finds plaintiff's argument to be unavailing in light of the Court's claims construction which

---

[3] (...continued)
Motion is an inappropriate forum in which to revisit issues relating to claim construction which have already been resolved by this Court.

[4] On February 6, 2002 defendant PetsMart, Inc., filed Evidentiary Objections to the Declaration of Henry C. Keck ("Evidentiary Objections"), requesting that the Court strike part or all of Keck's declaration for various reasons, including because it contains statements which are outside the scope of the subject matter covered by Keck's expert report submitted in the claims construction phase of this proceeding and thus inadmissible under Fed. R. Civ. P. 26(a)(1)(B). See Evidentiary Objections at 1. Defendant also argues that various statements in the declaration should be excluded as confusing, prejudicial, or inconsistent with or contrary to the Court's claim construction. The court finds that even putting aside defendants' evidentiary objections, Keck's declaration is not convincing and fails to raise a triable issue of fact.

S.\Orders\CIVIL\2000\00-00296.SJ.wpd        7

found that continuous attachment of the reservoir and trough is a limitation on the scope of the '592 patent. Consequently, the Court finds no literal infringement of the "means for mounting" of the '592 patent.

2. "Valve Means"

Defendants next contend that neither the HD nor the HD2 contains the required "valve means" limitation contained in varying language in claims 1, 15 and 18. In its Order, the Court construed the "valve means" limitation described therein to require either a "push-pull valve" or a "stop cock valve." Order at 18. In the Additional Order, the Court further construed the "means" portion of claims 1 and 18 to require a mechanical valve structure movable by hand between an open condition that allows free flow of water from the reservoir into the trough and a closed condition that prevents any flow of water from the reservoir. Additional Order at 5.

Defendants argue that the HD and the HD2 do not literally infringe claims 1, 15 and 18 of the '592 patent because both the HD and the HD2 have flexible elastic valves that are not manually movable between a closed and open position allowing the free flow of water.[5] Mot. at 18-22. Defendants contend that the flexible elastic valve is neither a push-pull or stop cock valve, nor the equivalent thereof. Mot. at 22. Examination of the flexible elastic valve used on the HD and the HD2 reveals that it is not a push-pull or a stop cock valve. See Mot., Physical Ex. 2 and 3. In addition,

---

[5] Defendants note that the flexible valves on the HD and HD2 are slightly different in structure, although they are substantially the same in operation. Id. at 18. For the sake of clarity, the Court will refer to the valves used in the HD and the HD2 as the "flexible elastic valve."

S:\Orders\CIVIL\2000\00-00296.SJ.wpd         8

plaintiff admits that the flexible elastic valve is not of "identical configuration" as that described in the '592 patent. Opp. Mot. at 3.

However, plaintiff contends that the flexible elastic valve is the equivalent under 35 U.S.C. 112 ¶ 6 to a push-pull valve or stop cock valve. Opp. Mot. at 3-4. Pursuant to 35 USC §112, ¶ 6, in order to satisfy a means-plus-function limitation literally, the flexible elastic valve used in the HD and the HD2 would have to perform the identical function required by the limitation described in the '592 patent by a statutorily equivalent means. Plaintiff argues that the flexible elastic valve performs the identical function, i.e., selectively permitting and terminating flow, by a means "insubstantially different" from the push-pull and stop cock valves disclosed in the '592 patent. Opp. Mot. at 4. In support of this argument, plaintiff submits Keck's testimony that the flexible elastic valve was a known equivalent of the push-pull and stop cock valves at the time the '592 patent was issued, and that the precise physical structure of the valve is of little or no importance to the overall combination of the claimed invention. See Keck Dec. ¶¶ 6, 7.

Defendants respond that the flexible elastic valve is the not the equivalent of the valve means described in the '592 patent because it is not a mechanical valve structure that is movable by hand between an open condition allowing the free flow of water and a closed condition, the structures required by the "valve means" in claims 1, 15 and 18 as construed by the Court. Mot. at 22; see Additional Order at 3-5. Defendants contend that the flexible elastic valve dispenses water only when the bottle is in the mounted position and is squeezed by the user (then released and squeezed

again to dispense more water), and that when it is in the storage position it will not dispense or leak water even if squeezed. Mot. at 20-21. In order to differentiate the valve means respectively required by the '592 patent and the flexible elastic valve, defendants submit the Expert report of Martin J. Siegel, P.E. See Solum Dec., Ex. 9, at ¶¶ 4, 5. Siegel concludes that the HD and the HD2 have "a type of valve that is entirely different in structure, material and function than anything described in the '592 Patent. . . ." Id. at 4.

The Court does not find plaintiff's argument to be persuasive. Although plaintiff argues that there is a genuine issue of material fact as to whether one skilled in the art would find the accused valve to be equivalent to a push-pull or stop cock valve under 35 U.S.C. § 112, ¶ 6, plaintiff and Keck seem to be wholly ignoring the Court's prior construction of the relevant claims. Plaintiff appears to be attempting to request that the Court reconsider its claims construction and broaden the scope of the claims so that the accused valves are equivalent to the valve means described in the '592 patent.

The Court finds that the flexible elastic valve used in the HD and the HD2 does not literally infringe claims 1, 15 and 18 because the valve means element required by these claims or its equivalent, as construed by the Court in its Order and Additional Order, is not present. Consequently, the Court finds that defendants have not literally infringed claims 1, 15 or 18 of the '592 patent.

B. <u>Infringement Under the Doctrine of Equivalents</u>

"If an asserted claim does not literally read on an accused product, infringement may still occur under the doctrine of

equivalents if there is not a substantial difference between the limitations of the claim and the accused product." Bayer AG, 212 F.3d at 1241. An "insubstantial difference" may be found when an element of the accused product performs "substantially the same function, in substantially the same way, to achieve substantially the same result as a corresponding element or limitation in a patent." See, e.g., Kemco Sales, Inc. v. Control Papers Co., Inc., 208 F.3d 1352, 1364 (Fed. Cir. 2000).

The doctrine of equivalents is limited, and it "cannot allow a patent claim to encompass subject matter that could not have been patented; nor can it be used to ignore the actual language of the patent." K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1366-67 (Fed. Cir. 1999). The doctrine of equivalents cannot allow a patent to encompass subject matter existing in the prior art. See, e.g., Wang Laboratories, Inc. v. Mitsubishi Elec. America, Inc., 103 F.3d 1571, 1578 (Fed. Cir. 1997) ("[a]rguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel").

Prosecution history estoppel is a limitation on the scope of equivalents that a patentee can claim under the doctrine of equivalents. See K-2 Corp., 191 F.3d at 1366-67. "Prosecution history estoppel can occur as a result of (i) amendments made to overcome patentability rejections or (ii) arguments made during prosecution that show 'a clear and unmistakable surrender of subject matter.'" Id. It applies when an aspect of the originally claimed subject matter was surrendered by the amendment and is thus outside the range of equivalents to which the patentee is entitled. See Warner-Jackson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S. 17,

39-40 (1997). "A claim of infringement under the doctrine of equivalents may be decided on summary judgment" where the prosecution history precludes a finding of equivalence, or where no reasonable jury could determine that two elements are equivalent. Bai, 160 F.3d at 1354.

### 1. "Means for Mounting"

Defendants argue that plaintiff is estopped from asserting that the "means for mounting" limitation includes a structure where the reservoir is detached from the trough during movement between the two mounted positions. Mot. at 9, 12-13. Defendants contend that because the Court held in its Order that "given the prosecution history of the '592 patent . . . plaintiff is estopped to disclaim continuous attachment," Order at 14, plaintiff cannot argue that the doctrine of equivalents can be applied to the accused "means for mounting."

In response, plaintiff argues that "the Court has not firmly established an estoppel as to non-continuous attachment of the reservoir and trough. . . ." Opp. Mot. at 13. However, the Court disagrees with plaintiff's interpretation of the Court's previous statement regarding estoppel, and finds that the prosecution history of the '592 patent estops plaintiff from arguing that the "means for mounting" in the HD2 infringes the claims of the '592 patent under the doctrine of equivalents.

### 2. "Valve Means"

Defendants next argue that the HD and the HD2 do not infringe claims 1, 15 and 18 of the '592 patent under the doctrine of equivalents because even assuming that the HD products' flexible elastic valves perform the same function of permitting and

1  preventing the flow of water[6], those valves do not do so in
2  substantially the same "way" as the "valve means" described in
3  claims 1, 15 and 18 as construed by the Court. Mot. at 22.
4  Defendants contend that the HD and HD2 flexible elastic valves
5  differ in several substantial ways from the valve described in the
6  '592 patent, as the flexible elastic valve: (1) is not a mechanical
7  valve structure; (2) is not movable by hand between an open and
8  closed position; (3) does not allow the free flow of water in the
9  dispensing position; (4) does not allow the trough to fill with
10 water to the level of the valve in the dispensing position; (5) does
11 not allow dispensing of water without having a flexible bottle that
12 must be squeezed to force water through the valve; and (6) does not
13 stay open an amount sufficient to dispense water unless the user
14 continues to apply pressure. Id. at 22-23.

15 In response, plaintiff contends that the flexible elastic valve
16 used in the HD and the HD2 serves the same function of as the valve
17 described in the '592 patent by selectively permitting and
18 terminating flow of the contents of the reservoir into the trough in
19 a similar way, namely, by "establishing an opening through which the
20 material can flow, allowing the flow of contents from the reservoir
21 to the trough to be selectively controlled." Opp. Mot. at 6; see
22 also Keck Dec., ¶¶ 6, 7. However, the Court finds plaintiff's
23 construction to be overly broad, in that it suggests that any valve
24 or controllable opening of any design would infringe on the "valve
25 means" element of claims 1, 15 and 18 of the '592 patent.

---

[6] Defendants note that they are not conceding this point, merely assuming, arguendo, that this is the case for purposes of the present motion. Mot. at 22.

Consequently, the Court finds that plaintiff has failed to raise a triable issue of fact as to whether defendants' HD and HD2 products infringe the '592 patent under the doctrine of equivalents.

For the reasons set forth herein, the Court concludes that defendants are entitled to summary judgment on the issue of noninfringement as to claims 1, 15 and 18.

## IV. CONCLUSION

Therefore, defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Date:     February 12, 2002

*Christina A. Snyder*
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE