# United States Court of Appeals for the Federal Circuit

02-1265

LAWRENCE I. WECHSLER,

Plaintiff-Appellant,

v.

MACKE INTERNATIONAL TRADE, INC., and ANTHONY O'ROURKE,

Defendants-Appellees,

and

PETSMART, INC.,

Defendant.

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

# Judgment

*ON APPEAL from the*    UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*in CASE NO(S).*    00-CV-296

*This CAUSE having been heard and considered, it is*

ORDERED and ADJUDGED:    <u>**AFFIRMED-IN-PART, REVERSED-IN-PART**</u>, and <u>**REMANDED**</u>

*ENTERED BY ORDER OF THE COURT*

DATED    JAN 29 2003

Jan Horbaly, Clerk

ISSUED AS A MANDATE: February 19, 2003

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record. This disposition will appear in tables published periodically.

# United States Court of Appeals for the Federal Circuit

02-1265

LAWRENCE I. WECHSLER,

Plaintiff-Appellant,

v.

MACKE INTERNATIONAL TRADE, INC. and ANTHONY O'ROURKE,

Defendants-Appellees,

and

PETSMART, INC.

Defendant.

---

DECIDED: January 29, 2003

---

Before CLEVENGER, SCHALL, and LINN, Circuit Judges.

SCHALL, Circuit Judge.

## DECISION

Lawrence I. Wechsler appeals from the decision of the United States District Court for the Central District of California that granted summary judgment of non-infringement with respect to U.S. Patent No. 5,636,592 ("the '592 patent") in favor of

Macke International Trade, Inc. ("Macke"), Anthony O'Rourke, and PetsMart, Inc. ("Petsmart"). See Wechsler v. Macke Int'l Trade, Inc., No. 00-00296-CAS (C.D. Cal. Feb. 13, 2002) (order granting summary judgment) ("Summary Judgment Order"). We affirm-in-part, reverse-in-part, and remand.

## DISCUSSION

### I.

Mr. Wechsler is the inventor of the device claimed in the '592 patent. He also owns the patent. The '592 patent is directed to a "Portable Device for Feeding Animals." Figs. 1a and 2a of the patent, both of which are reproduced below, illustrate an embodiment of the invention.



FIG. 1a   FIG. 2a

As shown, dispenser 10 includes a reservoir 2 and a trough 8. The reservoir is movably mounted to the trough so that it can nest in the trough when not in use, as shown in Fig. 1a. When needed for feeding, the reservoir can be moved clear of the trough so that its contents can be transferred to the trough for the animal, as shown in Fig. 2a. '592 patent, col. 4, ll. 60-67, col. 5, ll. 1-20.

02-1265 2

Reservoir 2 is mounted to trough 8 via a coupling assembly 1, as shown in more detail in Fig. 2b of the '592 patent, which is reproduced below.



FIG. 2b

Coupling assembly 1 optionally includes a valve portion 4 to selectively prevent discharge of the contents within the reservoir by permitting positive closure of the reservoir from the outside. '592 patent, col. 5, ll. 21-27.

Dispenser 10 also includes means for allowing relative movement of the reservoir and the trough between first and second mounted positions, shown respectively in Figs. 1a and 2a. In the embodiment shown in Figs. 1a, 2a, and 2b, the means for permitting relative movement while mounted is provided in the form of a pair of cylindrical shaft stubs or pivots 7a and 7b. Trough 8 has a pair of holes 9a and 9b on opposed peripheral sides 11a and 11b for receiving cylindrical shaft stubs 7a and 7b. '592 patent, col. 5, lines 30-49.

02-1265                                                3

II.

Macke and Petsmart make and/or sell two different devices, the Handi-Drink ("HD") and the Handi-Drink 2 ("HD2"). Both are portable water dispensing and drinking devices for animals. The HD is the original device, while the HD2 is an updated model with some differences in features, structure, and functions.

Mr. Wechsler sued Macke, Mr. O'Rourke[1], and Petsmart for infringement of the '592 patent by the HD and HD2 devices. He alleged that the HD device infringed claims 1-3, 5, 6, 11, 12, 14-16, and 18-20, and that the HD2 device infringed claim 15 and 16, of the '592 patent. Petsmart counterclaimed seeking a declaratory judgment of invalidity and non-infringement.

The district court noted that, for purposes of claim construction, only claims 1, 5, 6, 15, 16, and 18 of the patent were at issue. Accordingly, it issued two orders construing those claims. See Wechsler v. Macke Int'l Trade, Inc., No. 00-00296-CAS (C.D. Cal. Aug. 20, 2001) (order construing patent) ("First Claim Construction Order"); Wechsler v. Macke Int'l Trade, Inc., No. 00-00296-CAS (C.D. Cal. Oct. 30, 2001) (order construing additional portions of claims 1 and 18) ("Second Claim Construction Order").

After the district court's claim construction, Macke, Mr. O'Rourke, and Petsmart moved for summary judgment of non-infringement. In determining whether to grant summary judgment of non-infringement, the court noted that only claims 1, 15, and 18 are independent claims. Summary Judgment Order at 3. It further noted that a dependent claim cannot be infringed if the independent claim on which it depends is not infringed. Id. at 3-4. The district court then considered whether the HD device infringed

---

[1] Mr. O'Rourke is Macke's President and Secretary.

02-1265                                                                 4

claims 1, 15, and 18 and whether the HD2 device infringed claim 15 of the '592 patent. Based on a comparison of the construed claims and the two accused devices, the court concluded that the HD device did not infringe claim 1, 15, or 18 and that the HD2 device did not infringe claim 15, either literally or under the doctrine of equivalents. Id. at 4-14. As a result, the court granted summary judgment of non-infringement, id. at 14, and entered final judgment in favor of Macke, Mr. O'Rourke, and Petsmart on February 13, 2002. Mr. Wechsler appealed to us from that judgment.

After oral argument in this appeal, we noted that Petsmart's invalidity counterclaim apparently remained unresolved. Wechsler v. Macke Int'l Trade, Inc., No. 02-1265, slip op. at 2 (Fed. Cir. Nov. 13, 2002) (order dismissing appeal). We further noted that none of the exceptions to the general rule that non-final orders are not appealable, such as when there has been a certification for appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, was present. Id. at 2-3. Accordingly, we dismissed the appeal for lack of jurisdiction, subject, however, to reinstatement under the same docket number without the payment of an additional filing fee if, within thirty days of the date of the dismissal, a party appealed from the entry of a final judgment on the entire case or obtained a certification for appeal pursuant to Rule 54(b). Id. at 3.

On December 9, 2002, the district court issued an order granting Mr. Wechsler's request for a certification for appeal pursuant to Rule 54(b). Wechsler v. Macke Int'l Trade, Inc., No. 00-00296-CAS, slip op. at 1 (C.D. Cal. Dec. 9, 2002) (amended order granting plaintiff's motion for determination under rule 54(b)). At the same time, the court dismissed as moot, without prejudice, Petsmart's invalidity counterclaim. Id. at 2. On December 10, 2002, Mr. Wechsler filed a motion requesting reinstatement of the

appeal based on the district court's December 9, 2002 order. We granted that motion on December 18, 2002. See Wechsler v. Macke Int'l Trade, Inc., No. 02-1265 (Fed. Cir. Dec. 18, 2002) (order granting motion to reinstate appeal). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

III.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Johnston v. IVAC Corp., 885 F.2d 1574, 1576-77, 12 USPQ2d 1382, 1383 (Fed. Cir. 1989). In determining whether there is a genuine issue of material fact, the court must view the evidence in the light most favorable to the party opposing the motion, with doubts resolved in favor of the non-movant. Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1037 (Fed. Cir. 1995). We review de novo a district court's grant of summary judgment. Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed. Cir. 1994).

The determination of infringement is a two-step process. First, the court construes the claims at issue to correctly determine their scope. Second, it compares the properly construed claims to the accused device. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454-56, 46 USPQ2d 1169, 1172-74 (Fed. Cir. 1998) (en banc) (citations omitted). Claim construction is a question of law that we review de novo. Id. A determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. Insituform Techs., Inc. v. Cat Contracting, Inc., 161 F.3d 688, 692, 48 USPQ2d 1610, 1614 (Fed. Cir. 1998) (citation omitted).

A. Claim 1 of the '592 patent

Claim 1 of the '592 patent states:

1. A device for feeding animals from a feed material containing reservoir, said device comprising:

an open top trough structure providing a pooling space in which feed material can pool; and

means for mounting the reservoir on said trough so that it can be mountably moved, while remaining attached to the trough, from a first mounted position thereof wherein it is at least partially nested in said trough pooling space, to at least another mounted position wherein the reservoir is located sufficiently clear of said trough pooling space, so that if a transfer of feed material from the reservoir to the pooling space be effected to pool feed material in the trough, an animal has feeding access to pooled feed material in the trough.

'592 patent, col. 12, ll. 35-50 (emphases added). The district court construed the emphasized language in claim 1 to require a "feed transfer-effecting mechanism." Second Claim Construction Order at 3. In other words, the court found a valve structure limitation in the claim. The court stated that "a feed transfer-effecting mechanism is an essential component of the feeding device . . . ." Id. It further stated that the feed transfer-effecting mechanism "must be limited by the configurations disclosed in the specification[]." Id. Based on this claim construction, the district court determined that the HD device did not literally infringe claim 1 because the HD device did not have the feed transfer-effecting mechanism required by the claim. Summary Judgment Order at 10. In addition, the court determined that Mr. Wechsler had failed to raise a triable issue of fact as to whether the HD device infringed the '592 patent under the doctrine of equivalents. Id. at 14. Accordingly, the court granted summary judgment of non-infringement with respect to claim 1 of the '592 patent. Id.

On appeal, Mr. Wechsler argues that the district court erred in construing claim 1 as requiring a feed transfer-effecting mechanism. He contends that reading this additional limitation into claim 1 is inconsistent with the intrinsic evidence, which he asserts teaches that a feed transfer-effecting mechanism is optional. In response, Macke[2] argues that the district court correctly construed claim 1 as requiring a feed transfer-effecting mechanism.

We agree with Mr. Wechsler and hold that claim 1 does not require a feed transfer-effecting mechanism. First, nothing in the language of claim 1 requires such a limitation. As we have stated, "the claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim." Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1248, 48 USPQ2d 1117, 1120 (Fed. Cir. 1998). Put another way, "the language of the claim frames and ultimately resolves all issues of claim interpretation." Abtox, Inc. v. Exitron Corp., 122 F.3d 1019, 1023, 43 USPQ2d 1545, 1548 (Fed. Cir. 1997). The relevant language in claim 1 states:

> means for mounting the reservoir on said trough so that it can be mountably moved, while remaining attached to the trough, from a first mounted position thereof wherein it is at least partially nested in said trough pooling space, to at least another mounted position wherein the reservoir is located sufficiently clear of said trough pooling space, so that if a transfer of feed material from the reservoir to the pooling space be effected to pool feed material in the trough, an animal has feeding access to pooled feed material in the trough.

'592 patent, col. 12, ll. 40-50. Nothing in the quoted language requires us to construe claim 1 to require a "feed transfer-effecting mechanism." The district court relied on

---

[2] Macke and Mr. O'Rourke are the only defendants who collectively filed a response to Mr. Wechsler's appeal. Petsmart is not a party to this appeal. In the

02-1265          8

the following part of the quoted language to conclude that claim 1 requires such a limitation: "so that if a transfer of feed material from the reservoir to the pooling space be effected to pool feed material in the trough." Second Claim Construction Order at 3. Proper claim construction, however, demands interpretation of the entire claim in context, not just part of the claim language. See Hockerson-Halberstadt, Inc. v. Converse Inc., 183 F.3d 1369, 1374, 51 USPQ2d 1518, 1522 (Fed. Cir. 1999). When one considers all of the quoted language, it is clear that the language simply states that the claimed device requires a sufficient amount of clearance between the reservoir and trough to permit animal access to pooled feed material in the trough when the feed material is transferred to the trough from the reservoir during active use. In short, the quoted language does not require us to construe claim 1 as containing a feed transfer-effecting mechanism.

The specification also supports our conclusion. The specification states: "Coupling assembly 1 optionally includes a valve portion 4 to selectively prevent discharge of the contents within reservoir 2 by permitting positive closure of reservoir 2 from the outside." '592 patent, col. 5, ll. 24-27 (emphasis added). Thus, the specification does not suggest that a valve structure is required or is an "essential component" of the feeding device.

Finally, under the doctrine of claim differentiation, each claim in a patent is presumptively different in scope. Ecolab Inc. v. Paraclipse, Inc., 285 F.3d 1362, 1375, 62 USPQ2d 1349, 1358 (Fed. Cir. 2002) (citation omitted). This presumption is especially strong where there is a dispute over whether a limitation found in a

---

(Cont'd. . . .)
balance of this opinion, we refer to Macke and Mr. O'Rourke collectively as "Macke."

02-1265          9

dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two claims. Id. (citation omitted). In this case, claim 5 depends from claim 1 and states:

> 5. The device according to claim 1, further comprising:
>
> valve means for selectively permitting and terminating a flow of said contents from said reservoir to respectively effect and prevent said transfer.

'592 patent, col. 12, ll. 64-67. Because the only meaningful difference between claim 1 and claim 5, a dependent claim, is the limitation of a valve means, claim 1 should not be read as requiring a valve structure limitation.

In sum, we hold that the district court erred when it construed claim 1 to contain a valve structure limitation. For the reasons just stated, the claim does not contain such a limitation. At oral argument, Macke conceded that the HD device would infringe claim 1 if we were to conclude that claim 1 does not have a valve structure limitation. Accordingly, we hold that the HD device infringes claim 1 of the '592 patent, reverse the district court's grant of summary judgment of non-infringement with respect to the HD device, and remand for further proceedings consistent with this opinion.[3]

### B. Claim 15 of the '592 patent

Claim 15 of the '592 patent states:

> 15. A device for feeding animals from a feed material containing reservoir, said device comprising:
>
> an open top trough structure providing a pooling space in which feed material can pool;

---

[3] Because we have determined that the HD device infringes claim 1 of the '592 patent, we do not reach the issue of whether the HD device infringes any of the other asserted claims of the '592 patent.

02-1265 10

> means for mounting the reservoir on the trough so that it can be moved from a first mounted position thereof wherein it is at least partially nested in said trough pooling space to at least another mounted position wherein said reservoir is located clear of said trough pooling space so that if a transfer of feed material from said reservoir to the pooling space be effected to pool feed material in the trough, an animal has feeding acc[]ess to pooled feed material in the trough; and
>
> valve means for selectively permitting and terminating a flow of said contents from said reservoir.

'592 patent, col. 14, ll. 15-28 (emphasis added). In construing the means for mounting limitation in claim 15, the district court noted that the language of claim 15, the embodiments disclosed in the patent, and the prosecution history all suggest that the '592 patent envisioned that the trough and reservoir be continuously attached. First Claim Construction Order at 13. Accordingly, the court determined that the means for mounting limitation in claim 15 requires continuous attachment of the reservoir and trough. Id. at 14. Then, based on that construction, the court determined that the HD2 device did not literally infringe claim 15. Summary Judgment Order at 7-8. The court also determined that the HD2 device did not infringe claim 15 under the doctrine of equivalents because "the prosecution history of the '592 patent estops plaintiff from arguing that the 'means for mounting' in the HD2 infringes the claims of the '592 patent under the doctrine of equivalents." Id. at 12. Accordingly, the court granted summary judgment of non-infringement with respect to claim 15 of the '592 patent.[4] Id. at 14.

---

[4] The district court's decision of non-infringement with respect to claim 15 also was based on the court's interpretation of the claim's valve means limitation. Specifically, the court construed the valve means limitation in claim 15 as a means-plus-function limitation. First Claim Construction Order at 18. Based on that construction, the court held that the HD2 device did not infringe claim 15 either literally or under the doctrine of equivalents. Summary Judgment Order at 10, 14. Mr. Wechsler has appealed the district court's construction of the valve means limitation, but we do not reach the issue because we affirm the court's holding that the HD2

On appeal, Mr. Wechsler argues that the district court incorrectly construed claim 15 to require that the reservoir and trough be continuously attached. He argues that the language in claim 15, contrary to the language in other claims (such as claim 1), does not require the reservoir and trough to be continuously attached. He also argues that neither the specification nor the prosecution history identifies the feature of continuous attachment of reservoir and trough as an essential feature of the claimed device. He contends that the specification of the '592 patent provides support for a claim drawn to a device permitting detachable movement of the reservoir and trough. Macke, in response, argues that we should affirm the district court's claim construction because the specification and the prosecution history compel such a conclusion.

Although we agree with the district court's ultimate conclusion that claim 15 must be construed to require that the trough and reservoir be continuously attached, we arrive at that result via a somewhat different analysis. The limitation at issue states:

> means for mounting the reservoir on the trough so that it can be moved from a first mounted position thereof wherein it is at least partially nested in said trough pooling space to at least another mounted position wherein said reservoir is located clear of said trough pooling space so that if a transfer of feed material from said reservoir to the pooling space be effected to pool feed material in the trough, an animal has feeding acc[]ess to pooled feed material in the trough;

'592 patent, col. 14, ll. 19-26. Neither party disputes that this limitation is subject to 35 U.S.C. § 112, paragraph 6, which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to

---

(Cont'd. . . .)
device does not infringe claim 15 because the claim's means for mounting limitation is not present in the accused device.

cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. Because the means for mounting limitation is "expressed in 'means plus function' language and because it does not recite definite structure in support of its function, it is subject to the requirements of 35 U.S.C. § 112, ¶ 6 . . . ." B. Braun Med., Inc. v. Abbott Labs., 124 F.3d 1419, 1424, 43 USPQ2d 1896, 1899 (Fed. Cir. 1997) (citations omitted). The first step in construing such a means-plus-function limitation is to identify the function of the limitation. Micro Chem., Inc. v. Great Plains Chem. Co., 194 F.3d 1250, 1258, 52 USPQ2d 1258, 1263 (Fed. Cir. 1999). The next step is to identify the corresponding structure in the written description necessary to perform that function. Id. "Structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." Braun, 124 F.3d at 1424, 43 USPQ2d at 1900.

In this case, based on the claim language, the function performed by the "means for mounting . . ." limitation is "mounting the reservoir on the trough so that it can be moved from a first mounted position . . . to at least another mounted position." Turning to the specification to identify the structure that performs that function, we note that all the structures disclosed in the specification require that the reservoir and trough be continuously attached to each other during movement from a first position to a second position. See, e.g., Figs. 1a-2b, Figs. 4a-4c, Figs. 8a-9c, Figs. 10a-11b. We therefore

hold that the corresponding structure that performs the identified function requires continuous attachment of the reservoir to the trough.[5]

Mr. Wechsler points to the following language in the specification in support of his argument that the district court erred in construing the means for mounting limitation:

> It is further noted, that although each of the aforementioned embodiments utilize a hinge structure to accomplish mounted movement between first and second mounted positions, by permitting the reservoir to pivot in and out of its nesting relationship within the trough, other means for movably mounting the reservoir on the trough may be employed without departure from the contemplated scope of the invention as claimed. For example, a dispenser in accordance with the invention may be designed which permits a reservoir to be slidably mounted on the trough, the slide mechanism so employed permitting mounted movement between the nested, first mounted position, and the second mounted position, in which the reservoir is clear of the trough. In addition, means providing alternate mounted movement may include any one, or a combination of, hingable, slidable and other relative motion to accomplish suitable relative positioning of the reservoir and trough.

'592 patent, col. 12, ll. 12-27. Based upon this language, Mr. Wechsler argues that the specification provides for alternative structures and that the means for mounting should not be limited to structures that require continuous attachment of the reservoir to the trough. We disagree. Nowhere in the quoted language does it say that the reservoir and trough do not have to be continuously attached. Instead, the quoted language discloses structures that require continuous attachment of the reservoir to the trough. For example, the slidable mounting means presumably would require continuous attachment of the reservoir and trough during movement from the nested, first mounted

---

[5] The district court also relied on the prosecution history of the '592 patent to construe the means for mounting limitation in claim 15. However, it does not appear that Mr. Wechsler relied on the continuous attachment feature of his invention to distinguish claim 15 over the prior art.

position, to the second mounted position, in which the reservoir is clear of the trough. Therefore, this language does not help Mr. Wechsler.

Having construed the means for mounting limitation, we now turn to the question of infringement, to determine whether the district court properly held that the HD2 device does not infringe claim 15 either literally or under the doctrine of equivalents. We agree with the district court's conclusion that the HD2 device does not infringe claim 15 either literally or under the doctrine of equivalents.[6]

In order for an accused structure to literally meet a section 112, paragraph 6 means-plus-function limitation, the accused structure must either be the same as the disclosed structure or be a section 112, paragraph 6 "equivalent," i.e., (1) perform the identical function and (2) be otherwise insubstantially different with respect to structure. See Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1267, 51 USPQ2d 1225, 1229 (Fed. Cir. 1999). Under a modified version of the function-way-result methodology described in Graver Tank & Manufacturing Co. v. Linde Air Products Co., 339 U.S. 605, 608, 85 USPQ 328, 330 (1950), two structures may be "equivalent" for purposes of section 112, paragraph 6 if they perform the identical function, in substantially the same way, with substantially the same result. See Odetics, 185 F.3d at 1267, 51 USPQ2d at 1229-30 (setting forth a modified function-way-result analysis, and acknowledging that "this tripartite test developed for the doctrine of equivalents is

---

[6] Although we agree with the district court that the HD2 device does not infringe claim 15 under the doctrine of equivalents, we arrive at that result via a somewhat different analysis. We do not agree with the district court that the prosecution history estops Mr. Wechsler from arguing that the means for mounting limitation in the HD2 device infringes claim 15.

02-1265 15

not wholly transferable to the § 112, ¶ 6 statutory equivalence context" due to the functional identity requirement).

It is undisputed that the HD2 device requires one to disconnect and remove the reservoir from the trough for moving it between the storage and dispensing positions. Thus, it is clear that the structures disclosed in the specification of the '592 patent, which require continuous attachment of the reservoir and trough, are not identical to the accused structure in the HD2 device. Accordingly, we must ask whether the accused structure is an "equivalent' structure under section 112, paragraph 6. We conclude that even if we were to assume that the structure of the HD2 device and the structures disclosed in the '592 patent perform the identical function and achieve substantially the same result, they perform the identified function in substantially different ways. This is so because, although the structures disclosed in the '592 patent's specification require continuous attachment of the reservoir and the trough for moving the reservoir between the storage and dispensing positions, the accused structure does not require or even allow for such a continuous attachment. Instead, in the HD2 device, one must disconnect and remove the reservoir from the trough for moving it between the storage and dispensing positions. Accordingly, we hold that the HD2 device does not literally infringe claim 15 of the '592 patent.

Because we have determined that the structures disclosed in the '592 patent and the accused structure perform the identified function in substantially different ways, Mr. Wechsler also cannot prevail under the doctrine of equivalents. See Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 1365, 54 USPQ2d 1308, 1316 (Fed. Cir. 2000) ("When a court determines that the 'way' and/or 'result' is/are substantially different

under a section 112, paragraph 6 equivalents analysis, a patentee cannot prevail under the doctrine of equivalents for the same reason(s).") Accordingly, we affirm the district court's grant of summary judgment of non-infringement with respect to the HD2 device.

## CONCLUSION

Because we conclude that the district court erred in construing claim 1 of the '592 patent, we reverse the court's grant of summary judgment of non-infringement with respect to the HD device and hold that the HD device infringes claim 1 of the '592 patent. The case is remanded for further proceedings consistent with this opinion.[7] However, because we conclude that the district court correctly construed the means for mounting limitation in claim 15 and did not err in granting summary judgment of non-infringement with respect to the HD2 device, we affirm the court's decision insofar as it relates to the alleged infringement of claim 15 of the '592 patent by the HD2 device. Accordingly, we affirm-in-part, reverse-in-part, and remand.

No costs.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: _____ Date: 03/19/03

---

[7] If Petsmart's invalidity counterclaim is renewed, presumably the invalidity issue should be resolved before the district court addresses the issue of Mr. Wechsler's damages arising from the infringement of claim 1.