Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LAWRENCE I. WECHSLER,<br><br>    Plaintiff,<br><br>vs.<br><br>MACKE INTERNATIONAL TRADE, INC.; ANTHONY O'ROURKE; and PETSMART, INC.,<br><br>    Defendants. | Case No. CV 00-00296-CAS<br><br>**ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART AS TO DEFENDANT ANTHONY O'ROURKE**<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

## I. INTRODUCTION

Plaintiff Lawrence I. Wechsler is the inventor of a portable device for feeding animals, for which he owns U.S. Patent No. 5,636,592 ("the '592 patent"), issued June 10, 1997. In this action, plaintiff alleges that defendant Macke International Trade, Inc. ("Macke") and Anthony O'Rourke, Macke's President and Secretary, have infringed the '592 patent by "importing, using, offering for sale, and selling in the United States, two different products, the 'Handi-Drink' and the 'Handi-Drink 4' products as well as inducing infringement of the '592 patent." Plaintiff's Statement of Genuine Issues of Material Fact ("SGI") ¶ 1; see also defendants' Statement of Uncontroverted Facts ("SUF") ¶ 2. The

Handi-Drink products are portable water dispensing and drinking devices for animals, with the Handi-Drink ("HD-1") being the original device and the Handi-Drink 4 ("HD-4") being a later, smaller model. SUF ¶ 2.

Plaintiff filed the original complaint in this action on July 19, 1999. Plaintiff subsequently filed a First Amended Complaint ("FAC") on May 8, 2000, adding defendant Petsmart, Inc., and asserting claims against all defendants for infringement in violation of 35 U.S.C. §271(a), and against O'Rourke and Macke for inducing infringement pursuant to 35 U.S.C. §271(b).

Following a March 23, 2001 hearing held in accordance with Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996), the Court issued an Order Construing Patent on August 20, 2001. Subsequently, on October 30, 2001, the Court issued an Order Construing Additional Portions of Claims 1 and 18.

The Court granted defendants' motion for summary judgment of non-infringement of the '592 patent on February 13, 2002. The Federal Circuit reversed the Court's grant of summary judgment of non-infringement with respect to HD-1, and affirmed the Court's grant of summary judgment of non-infringement with respect to HD-2 in an order dated January 29, 2003.

All claims against defendant Petsmart, Inc., and Petsmart Inc.'s counterclaim against plaintiff were dismissed with prejudice pursuant to a stipulation and order entered on July 7, 2003.

Defendants Macke and O'Rourke then moved for summary judgment of invalidity of the '592 patent. On November 25, 2003, the Court denied defendants' motion.

The parties are now before the Court on defendants' motion for summary judgment, seeking the dismissal of defendant Anthony O'Rourke, filed January 8, 2004. The Court held a hearing on defendants' motion for summary judgment on February 9, 2004.[1]

---

[1] At the hearing, the Court inquired as to whether O'Rourke would provide assurances that Macke could satisfy a judgment against it in this action, such that the
(continued...)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed

---

[1](...continued)
portion of defendants' motion pertaining to whether O'Rourke was an alter ego of Macke would be rendered moot. In response to the Court's inquiry at the hearing, O'Rourke declined to file a sworn declaration, but instead mailed a letter to the Court. O'Rourke's letter precipitated a letter from plaintiff's counsel, requesting that the Court defer ruling on defendants' summary judgment motion until plaintiff had an opportunity to file a response. On February 24, 2004, plaintiff filed a brief styled as "Response to Defendants' Expected Position Regarding the Assets of Macke International, Inc. in Connection with Defendants' Motion for Summary Judgment Dismissing Defendant Anthony O'Rourke," as well as a Declaration of John R. Woods in Support of Plaintiff's Response, and a Supplemental Declaration of Robert E. Weschsler in Support of Plaintiff's Response. On February 25, 2004, the Court ordered that no further submissions be filed in connection with the summary judgment motion.

facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## III. DISCUSSION

### A. Should Defendants' Motion for Summary Judgment be Granted as to the Issue of Whether Macke is the Alter Ego of Anthony O'Rourke Pursuant to California Law?

Defendants argue that Macke cannot be held to be the alter ego of Anthony O'Rourke under California law. Mot. at 4. Defendants contend that "a corporation's liability may be imposed on an individual, only when two conditions are met: (1) there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased and (2) adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." Mot. at 5-6, citing Firstmark Capital Corp. v. Hempel Financial Corp., 859 F.2d 92, 94 (9th Cir. 1988).

Defendants argue that California courts have found a unity of interest between a shareholder and a corporation in situations in which the shareholder: (1) fails to contribute capital or issue stock, (2) commingles corporate funds with personal funds, or (3) fails to observe corporate formalities. Mot. at 5. Defendants argue that the relationship between Macke and O'Rourke falls into none of these categories. In particular, defendants contend that "Macke, Inc., is a sufficiently capitalized corporation as evidenced by its twelve years of successful operation." Mot. at 5, citing O'Rourke Decl. ¶ 5. In addition, defendants point to an insurance policy which they contend is "sufficient to capitalize [Macke] for all reasonably foreseeable contingencies." Mot. at 6, citing O'Rourke Decl., Ex. C.

Defendants further contend that a likely damage award in this action "would be less than $30,000 to $70,000" and that there is "no evidence suggesting that Macke cannot respond to such a damage award."[2] Reply at 7, citing Second O'Rourke Decl. ¶ 4. Defendants also argue that Macke observed corporate formalities by appointing officers, holding board meetings, keeping minutes, maintaining corporate records and filing corporate tax returns. Mot. at 6, citing O'Rourke Decl. ¶ 6, Ex. D. According to defendants, Macke was also monitored by an independent corporate accountant who ensured that there was no commingling of corporate and personal funds. Id., citing O'Rourke Decl. ¶ 9, Ex. G. Finally, defendants state that Macke leases office space. Id., citing O'Rourke Decl. ¶ 8, Ex. F.

As to the issue of whether adherence to the corporate veil would result in fraud or injustice, defendants argue that "[t]here is no evidence in the record, nor can [p]laintiff point to any which would indicate any injustice or equitable purpose that may result from ignoring its corporate form." Mot. at 6.

Plaintiff responds that "it is undisputed that [O'Rourke] is the sole shareholder, director and officer of [Macke]" and that "an examination of the totality of the circumstances leads to the inescapable conclusion that the separate personalities of the corporation and the individual no longer exist." Opp. at 3. Regarding the insurance policy cited by defendants, plaintiff argues that defendants have not disclosed the existence of any insurance coverage for the patent infringement claims in this action, and that the Certification of Interested Parties filed pursuant to the Local Rules on October 10, 2003,

---

[2] O'Rourke states that the total sales of the HD-1 and HD-4 products have amounted to less than 400,000 units, totaling less than $1,000,000 in revenue. Second O'Rourke Decl. ¶ 3. O'Rourke states further that all but $220,000 of these sales were to Petsmart, Inc., which has settled this action. Id. Therefore, defendants contend that, based on a royalty in the range of 3% to 7%, total damages would range from $6,000 to $15,400 if the damage award excluded the Petsmart, Inc. sales, and $30,000 to $70,000 if the damage award included the Petsmart, Inc. sales. Reply at 7.

S:\Orders\CIVIL\2000\00-00296.orourke.msj3.wpd    5

does not identify any insurance carrier.³ Opp. at 4, citing O'Rourke Decl. ¶ 5, and R. Wechsler Decl. ¶¶ 2,3. Plaintiff argues that the balance sheet of Macke as of October 31, 2000, raises a genuine issue of material fact in that "the California Supreme Court has held that undercapitalization alone will justify piercing the corporate veil." Opp. at 4, quoting <u>Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hyrolec</u>, 854 F.2d 1538, 1544 (9th Cir. 1988), and citing Wechsler Decl., Ex. H.

Plaintiff also sets forth additional arguments as to why there exists a unity of interest exists between O'Rourke and Macke. Plaintiff first argues that O'Rourke has held himself out as being personally liable for the debts of Macke in two letters written to Macke's customers by counsel to O'Rourke and Macke. Opp. at 5, citing R. Wechsler Decl., Confid. Exs. F, G. Plaintiff also contends that O'Rourke treats the assets of Macke as his own by referring to one of Macke's registered trademarks entitled "Petcrew" as "Anthony O'Rourke's Pet Crew" on the Internet web sites "www.handi-drink.com" and "www.petcrew.net." <u>See</u> Opp. at 5, citing L. Wechsler Decl. ¶¶ 2,4. Plaintiff further contends that O'Rourke "uses his own name, photograph, and longstanding reputation in the pet products industry in connection with advertising for Defendants' products." Opp. at 6.

Plaintiff argues that he has satisfied his burden under the second prong of California's alter ego inquiry by offering evidence to show that failure to pierce the corporate veil would sanction a fraud or promote injustice. Opp. at 7. In this regard, plaintiff cites a letter from defendants' counsel to plaintiff alluding to the possibility of "perhaps ... reconfiguring MIT [Macke] in anticipation of any adverse decision" as evidence of "[d]efendants' fraudulent intent to deprive Plaintiff of recovery."⁴ Opp. at 8,

---

³ Plaintiff acknowledges that defendants' initial Certification of Interested Parties dated February 22, 2000, identified the Hartford Insurance Group as an insurer of defendant Macke. Mot. at 4.

⁴ Defendants argue that the letter from defendants' counsel is not admissible
(continued...)

citing R. Wechsler Decl., Ex. C. Plaintiff also argues that corporate assets and liabilities have been manipulated such that the patent at issue in this action is owned by O'Rourke.[5] Opp. at 7. Defendants reply that while plaintiff's '592 patent has not been assigned to Macke, the patent has been licensed to Macke, and therefore the assets and liabilities of Macke have not been manipulated. Reply at 10, citing Second O'Rourke Decl. ¶ 7, Ex. L (Product License and Consulting Agreement dated April 7, 1996, between Anthony O'Rourke and Macke International Trade, Inc.).

In order for the acts of a corporation to be legally recognized as being controlled by an individual person, California law requires: "First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; [and] second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." Firstmark Capital Corp. v. Hempel Financial Corp., 859 F. 2d 92, 94 (9th Cir. 1988), citing Wood v. Elling Corp., 20 Cal. 3d 353 (1977).

Those factors to be considered in determining whether the alter ego doctrine applies include commingling of funds and other assets, the individual holding himself out as liable for the debts of the corporation, ownership and control of the corporation by the individual, inadequate capitalization, disregard of corporate formalities, and lack of segregation of corporate records. See, e.g., Mid-Century Insurance Co. v. Gardner, 9 Cal.

---

[4] (...continued)
pursuant to Fed. R. Evid. 408 because it is "[e]vidence of conduct or statements made in compromise negotiations." Reply at 11, referring to R. Wechsler Decl., Ex. C. The letter appears to be admissible for the purpose that it is offered, but it does not alter the Court's analysis.

[5] Plaintiff argues that while "30 out of 33 patents issued to Anthony O'Rourke that do not pertain to [Macke] have been assigned to corporations, no data indicating assignment to [Macke] appears on any of the six patents issued to Anthony O'Rourke that cover products sold by [Macke]." Opp. at 7, citing L. Wechsler Decl. ¶ 3, Ex. K.

Case 2:00-cv-00296-CAS-RZ Document 199 Filed 02/27/04 Page 8 of 15 Page ID #:196

App. 4th 1205, 1213, n.3 (1992); Sonora Diamond Corp. v. Superior Court of Tuolumne County, 83 Cal. App. 4th 523, 538-539 (2000); and Firstmark Capital Corp. v. Hempel Financial Corp., 859 F. 2d 92, 94 (9th Cir. 1988).

The Court concludes that no genuine issue of material fact exists as to whether the first prong of California's alter ego analysis can be satisfied – namely "such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased." Firstmark Capital Corp., 859 F. 2d at 94. Plaintiff has not offered any evidence tending to show that Macke has disregarded corporate formalities.[6] Standing alone, the use of Anthony O'Rourke's name, photograph and long-standing reputation in the pet products industry to advertise Macke's products is not enough to support the conclusion that a unity of interest exists between O'Rourke and Macke. See L. Wechsler Decl., Ex. L. While plaintiff contends that O'Rourke has held himself out as being liable for the debts of Macke, the sole evidence bearing out this contention are two letters written by counsel for Macke and O'Rourke to potential Macke customers.[7] See

---

[6] Defendants provide a certificate of incorporation (see O'Rourke Decl., Ex. B), a "Business Owner" insurance policy with an expiration date of August 5, 2002 (see O'Rourke Decl., Ex. C), minutes of Macke's first meeting of incorporation (O'Rourke Decl., Ex. D), issuance of stock (O'Rourke Decl., Ex. E), a lease between Macke and Corina O'Rourke (O'Rourke Decl., Ex. F), and corporate accounting procedures set forth in a corporate resolution (O'Rourke Decl., Ex. G).

[7] In these letters, counsel for Macke and O'Rourke writes to Macke's customers, identifying himself as "counsel to Anthony O'Rourke and Macke International Trade regarding matters related to a lawsuit filed against my clients alleging patent infringement." See R. Wechsler Decl., Confid. Exs. F, G. In a paragraph in which counsel describes O'Rourke's reputation in the pet products industry, counsel goes on to state, "to ensure that you are not exposed to liability regarding your involvement with 'Handi-Drink,' this letter provides notice that my client will indemnify you and hold you harmless [regarding any damages related to the instant action]." R. Wechsler Decl., Confid. Exs. F, G.

O'Rourke states that these letters were written as a result of his instructions to his counsel "to send letters to Macke's customers confirming that Macke [not O'Rourke]
(continued...)

R. Wechsler Confid. Exs. F, G. Finally, plaintiff's contention that Macke is undercapitalized[8] does not raise a genuine issue of material fact as to the issue of a unity of interest between O'Rourke and Macke in light of the undisputed evidence that Macke issued stock, leased office space, adopted a corporate accounting policy, and purchased a Business Owner's insurance policy.[9]

As to the second requirement for finding alter ego, the Ninth Circuit has stated that "under California law the kind of inequitable result that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors." Firstmark Capital Corp., 859 F.2d at 94, citing Orloff v. Allman, 819 F.2d 904, 909 (9th Cir. 1987). "Certainly it is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof an 'inequitable result.'" Mid-Century Insurance Co. v. Gardner, 9 Cal. App. 4th 1205, 1213 (1992).

---

[7](...continued)
would indemnify those customers from any patent infringement action by Lawrence Wechsler." Second O'Rourke Decl. ¶ 5.

[8] As of October 31, 2000, the balance sheet of Macke showed total assets comprised of $39,805.42 in a Charter Pacific checking/savings account, equity comprised of retained earnings of $138,391.74, net income of $88,178.31, less distributions in the amount of $186,764.63, and no liabilities. R. Wechsler Decl., Confid. Ex. H.

[9] Plaintiff points to the statement by the Ninth Circuit that, "undercapitalization alone will justify piercing the corporate veil." Nilsson, Robbins, Dalgarn, Berlin Carson & Wurst v. Louisiana Hyrdrolec, 854 F.2d 1538, 1544 (9th Cir. 1988). However, in Nilsson the Ninth Circuit had noted that the President of the corporation at issue had also guaranteed the loans of the corporation, and paid the corporation's bills from his own bank account, in addition to undercapitalizing the corporation. Nilsson, 854 F.2d at 1544. Likewise, in Minton v. Cavaney, 56 Cal. 2d 576 (1961), cited by the Ninth Circuit in Nilsson, the California Supreme Court held that the capital of the corporation at issue was trifling compared to the business being done and the risk of loss, thereby justifying the conclusion that the corporation's director was the alter ego of the corporation. Plaintiff does not cite to any evidence indicating that Macke's capitalization is "trifling" in light of its revenues and potential liabilities.

S:\Orders\CIVIL\2000\00-00296.orourke.msj3.wpd    9

The Court concludes that plaintiff has failed to raise a genuine issue of material fact as to the second prong of California's alter ego analysis – the issue of whether, "adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." Firstmark Capital Corp., 859 F. 2d at 94. As "[e]vidence of [d]efendants' fraudulent intent to deprive Plaintiff of recovery," plaintiff cites to a substantially redacted letter sent from defendants' counsel to plaintiff regarding settlement discussions. Opp. at 8, citing R. Wechsler Decl., Ex. C. The letter states: "Still further, in the interest of immediate settlement, MIT [Macke] is willing to add another $ [redacted] to its settlement offer to avoid collateral expenses MIT/O'Rourke [sic] if this matter proceeds to trial, including perhaps, reconfiguring MIT in anticipation of any adverse decision." R. Wechsler Decl., Ex. C. While this evidence, interpreted in a light most favorable to plaintiff, indicates that defendants intended to minimize the impact of any adverse judgment on Macke, plaintiff does not cite to any evidence tending to show that defendants actually went ahead and reconfigured the corporation. The evidence presented by plaintiff does not demonstrate an abuse of the corporate form such that "an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." Firstmark Capital Corp., 859 F. 2d at 94 (9th Cir. 1988). While plaintiff's anticipated judgment may remain "unsatisfied if the corporate veil is not pierced," this alone does not constitute "an inequitable result." Mid-Century Insurance Co., 9 Cal. App. 4th at 1213. Therefore, defendants are entitled to summary judgment on the issue of whether O'Rourke is the alter ego of Macke.

**B.    Should Defendants' Motion for Summary Judgment Be Granted as to the Issue of Whether O'Rourke Can Be Held Liable for Patent Infringement Pursuant to 35 U.S.C. § 271(a)?**

Defendants contend that for O'Rourke to be personally liable for patent infringement pursuant to 35 U.S.C. § 271(a), there must be evidence to justify piercing the corporate veil, and O'Rourke must be found to not be acting within the scope of his employment. Mot. at 7, citing Manville Sales Corporation v. Paramount Systems, Inc.,

917 F.2d 544, 552-3 (Fed. Cir. 1990). Defendants argue that O'Rourke's actions in response to assertions of patent infringement constituted "a straightforward commercial response." Mot. at 8, citing <u>Hoover Group, Inc. v. Custom Metalcraft, Inc.</u>, 84 F.3d 1408, 1410 (Fed. Cir. 1996).

Plaintiff contends that O'Rourke acted outside the scope of his employment with Macke by offering HD-1 for sale to foreign customers within the United States at trade shows. Opp. at 11-12, citing Wechsler Decl., Ex. I, Deposition Transcript of Anthony O'Rourke, 18-19.

35 U.S.C. § 271(a) provides that "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent thereof, infringes the patent." For officers of a corporation to be held personally liable for a corporation's infringement pursuant to 35 U.S.C. § 271(a), "there must be evidence to justify piercing the corporate veil." <u>Manville Sales Corporation v. Paramount Systems, Inc.</u>, 917 F.2d 544, 552 (Fed. Cir. 1990). A finding that a corporation's officers "were acting within the scope of their employment" precludes "liability of ... officers in their individual capacities with respect to infringement under section 271(a)." <u>Manville Sales Corporation</u>, 917 F.2d at 553. Because the Court concludes that Macke cannot be held to be the alter ego of O'Rourke, O'Rourke may not be held personally liable for Macke's alleged infringing activities pursuant to 35 U.S.C. § 271(a).

As an alternate ground for individual liability pursuant to 35 U.S.C. § 271(a), plaintiff appears to argue that O'Rourke acted outside the scope of his corporate authority by "offering the infringing 'Handi-Drink' product for sale within the United States for delivery to customers outside the United States," thereby assuming individual liability. Opp. at 11. While plaintiff contends that "[t]he product was shown to foreign customers that visited Defendants' booth at several trade shows held within the United States," and therefore O'Rourke was acting outside the scope of his corporate authority, plaintiff does

not cite to any admissible evidence to support this contention.[10] Opp. at 12, citing R. Wechsler Decl., Ex. I, O'Rourke Deposition Transcript, 8-9. Therefore, the Court concludes that O'Rourke cannot be held liable pursuant to 35 U.S.C. § 271(a).

### C. Should Defendants' Motion for Summary Judgment Be Granted as to the Issue of Whether O'Rourke Can Be Held Liable for Patent Infringement Pursuant to 35 U.S.C. § 271(b)?

Defendants argue that in order for O'Rourke to be held liable for inducing patent infringement under 35 U.S.C. § 271(b), he must be found to have "actively and knowingly assist[ed] with the corporation's infringement." Mot. at 9, citing Water Technologies Corp. v. Calco Ltd., 850 F.2d 660, 668 (Fed. Cir. 1988). Defendants contend that "[t]here is no evidence in the record nor can any be shown of the requisite knowledge or 'aiding and abetting' the corporation's infringement by Anthony O'Rourke." Mot. at 9.

Plaintiff contends that disputed issues of material fact preclude defendants from prevailing on summary judgment as to O'Rourke's liability for patent infringement pursuant to 35 U.S.C. § 271(b). First, plaintiff argues that it could be inferred that O'Rourke personally was aware of the '592 patent before he designed, manufactured and sold HD-1. Opp. at 9. In particular, plaintiff contends that Macke had entered into a contract with John Woods, owner of U.S. Patent No. 5,738,039 for a Portable Pet Bowl in August 1997. Id. Because plaintiff's '592 patent was cited to Mr. Woods by the U.S. Patent and Trademark Office on July 29, 1997, plaintiff argues that O'Rourke knew of plaintiff's '592 patent prior to the time that O'Rourke designed, manufactured and sold HD-1.[11] Therefore, plaintiff contends that such evidence "is sufficient for a trier of fact

---

[10] Anthony O'Rourke's deposition testimony regarding the issue of sales to foreign customers is as follows: "Q. Do you know if any foreign customers came to your booth at any of these trade shows? A. I don't recall." See R. Wechsler Decl., Ex. I, O'Rourke Deposition Transcript, 8-9.

[11] Plaintiff also argues that he "has recently discovered additional evidence demonstrating that Mr. O'Rourke and Macke knew of the patent-in-suit well before the filing of this lawsuit, and even before they began selling their products." See Plaintiff's
(continued...)

1  to infer that [O'Rourke] ... knowingly and willfully infringed Plaintiff's '592 Patent."
2  Opp. at 10.
3      In addition, plaintiff argues that O'Rourke could be held liable under 35 U.S.C. §
4  271(b) by reason of the introduction of the HD-4 into the marketplace in the time period
5  between this Court's order granting summary judgment of non-infringement on February
6  13, 2002, and the Order from the Federal Circuit dated January 29, 2003, concluding that
7  HD-1 infringed upon the '592 patent. Opp. at 11, citing R. Wechsler Decl., Ex. I,
8  Deposition Transcript of Anthony O'Rourke, 18-22, 46.[12] Plaintiff argues that "defendants
9  have provided no evidence that the decision by Anthony O'Rourke to introduce the
10 'Handi-Drink 4' into the marketplace before the final adjudication of this action [by the
11 Federal Circuit] was based upon competent legal advice." Opp. at 11.

---

[11](...continued)
Response to Defendants' Expected Position Regarding the Assets of Macke ("Plaintiff's Response") at 6. Plaintiff argues that "Mr. Woods provides clear evidence that at least the attorney, Richard E. Lyons, Jr., who represented Defendants at that time knew about and considered Plaintiff's patent-in-suit many months prior to the design and introduction of all products at issue in this case." Plaintiff's Response at 7. Woods states that in September 1997, Lyon, "in my presence, thoroughly reviewed, for at least a full hour, the specification and file history pertaining to the '039 Patent, including the ... Notice of Allowance and Examiner's Amendment pertaining to the '039 Patent in which Mr. Wechsler's '592 Patent appears as art of record." Declaration of John R. Woods ¶ 7. Woods further states that "[w]hen the meeting was concluded, Mr. Lyon indicated to me that he would be giving his recommendations to Anthony O'Rourke regarding whether continued interest in my invention by Macke International Trade, Inc. was warranted, based upon his evaluation of the file history." Id.

[12] Plaintiff cites the following deposition testimony of O'Rourke in support of the contention that a genuine issue of material fact exists as to whether O'Rourke possessed the requisite level of intent necessary to be liable for infringement pursuant to 35 U.S.C. § 271(b): "Q. Did you receive any advice of counsel regarding the sale of the Hand[i]-Drink 4 product, hinged product? [objection] ... Q. Can you answer the question? A. I don't recall. Q. What was your reason for terminating the sales of the hinged Hand[i]-Drink 4 in the United States? A. Concern that our customers would be troubled. Q. Troubled by what? A. Harassment. Q. Harassment by who? A. Your client. See R. Wechsler Decl., Ex. I, O'Rourke Deposition Transcript, 21-22.

35 U.S.C. § 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." "[F]or a corporate officer to be personally liable for inducing infringement, it is not necessary that the corporate veil be pierced." Hoover Group, Inc. v. Custom Metalcraft, Inc., 84 F.3d 1408, 1412 (Fed. Cir. 1996), citing Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1578-79 (Fed. Cir. 1986). However, an officer of a corporation can be held personally liable for actively inducing infringement under 35 U.S.C. § 271(b) only if the officer "possessed specific intent to 'aid and abet' infringement." Hoover Group, Inc., 84 F.3d at 1412, citing Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 668 (Fed. Cir. 1988). See also Ferguson Beauregard v. Mega Systems, LLC, 350 F.3d 327 (Fed. Cir. 2003). "While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." Water Technologies Corp., 850 F.2d at 668, citing Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1272 (Fed. Cir. 1986), cert. denied, 479 U.S. 1030 (1987). "In sum, unless the corporate structure is a sham ... personal liability for inducement to infringe is not automatic but must be supported by personal culpability." Hoover Group, Inc., 84 F.3d at 1412.

As to defendants' alternative argument, the Court concludes that O'Rourke's decision to test-market the HD-4 product prior to the Federal Circuit's decision that HD-1 infringed the '592 patent, does not raise a genuine issue of material fact as to whether O'Rourke "possessed specific intent to 'aid and abet' infringement." Hoover Group, Inc., 84 F.3d at 1412. At the time of the decision to test-market the HD-4, he was as a matter of law entitled to rely on the finality of the order granting summary judgment of non-infringement entered by the district court.

However, the Court also concludes that a genuine issue of material fact exists as to whether O'Rourke had knowledge of the '592 patent following the meeting between Woods and Lyon, and that a reasonable juror could infer that O'Rourke possessed the specific intent to aid and abet infringement necessary to be held liable pursuant to 35

U.S.C. § 271(b).[13] In particular, Woods' statement that Lyon reviewed a Notice of Allowance in which the '592 patent appeared as art of record, coupled with Woods' statement that Lyon intended to talk to O'Rourke following that meeting, give rise to a genuine issue of material fact as to whether O'Rourke learned of the '592 patent in 1997, and possessed the "personal culpability" required to establish liability pursuant to 35 U.S.C. § 271(b). Hoover Group, Inc., 84 F.3d at 1412.

## IV. CONCLUSION

Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated: February 26, 2004

                                       /s/ Christina A. Snyder
                                        CHRISTINA A. SNYDER
                                        UNITED STATES DISTRICT JUDGE

---

[13] In its tentative ruling issued at the hearing on February 9, 2004, the Court tentatively concluded that plaintiff had failed to raise a material issue of disputed fact to support the conclusion that O'Rourke had the requisite intent to infringe. However, the late-filed Woods declaration suggests by way of admissible evidence to the contrary. Because the issue of O'Rourke's intent poses important factual and legal questions for the final determination of this case, the Court in its discretion considers the late-filed Woods declaration, so that this case may be decided on its merits.