```
                                          Priority  ___
                                          Send      ___
         UNITED STATES DISTRICT COURT     Enter     ___
         CENTRAL DISTRICT OF CALIFORNIA   Closed    ___
                                          JS-5/JS-6 ___
                                          JS-2/JS-3 ___
                 MINUTE ORDER             Scan Only ___
```

Case No.: CV-00-00296 CAS (BQRx)          January 4, 2005

Title:    LAWRENCE I. WECHSLER v. MACKE INTERNATIONAL TRADE,
          INC., and ANTHONY O'ROURKE

---

PRESIDING:    HONORABLE CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE

Maynor Galvez,                                    ~~Laura Elias,~~
Deputy Clerk                                      Court Reporter

---

PLAINTIFF COUNSEL PRESENT:          DEFENDANT COUNSEL PRESENT:

**THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).**

PROCEEDINGS:  **PLAINTIFF'S MOTION FOR**
              **(1) ENHANCED DAMAGES UNDER 35 U.S.C. § 284;**
              **(2) ATTORNEY FEES UNDER 35 U.S.C. § 285;**
              **(3) COSTS UNDER F.R.C.P. 54(d)(1);**
              **(4) PREJUDGMENT INTEREST**
              (filed November 10, 2004)

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

    Plaintiff Lawrence I. Wechsler is the inventor of a portable device for feeding animals, for which he owns U.S. Patent No. 5,636,592 ("the '592 patent"), issued on June 10, 1997.  In this action, plaintiff alleges that defendants Macke International Trade, Inc. ("Macke") and Anthony O'Rourke, Macke's President and Secretary, have infringed the '592 patent by "importing, using, offering for sale, and selling in the United States, two different products, the 'Handi-Drink' and the 'Handi-Drink 4' products as well as inducing infringement of the '592 patent." Plaintiff's Statement of Genuine Issues of Material Fact, filed on January 23, 2004, at ¶ 1; see also defendants' Statement of Uncontroverted Facts, filed on January 8, 2004, at ¶ 2. Plaintiff filed the original complaint in this action on July 19, 1999, and a first amended complaint on May 8, 2000, asserting claims against defendants for patent infringement in violation of



35 U.S.C. §271(a), and against O'Rourke and Macke for inducing infringement pursuant to 35 U.S.C. §271(b).[1]

The Court granted defendants' motion for summary judgment of non-infringement of the '592 patent on February 13, 2002. The Federal Circuit reversed the Court's grant of summary judgment of non-infringement with respect to Handi-Drink 1, and affirmed the Court's grant of summary judgment of non-infringement with respect to Handi-Drink 2 on January 29, 2003. On November 25, 2003, the Court denied defendants' motion for summary judgment of invalidity of the '592 patent.

On January 8, 2004, defendants moved for summary judgment seeking the dismissal of defendant Anthony O'Rourke. On February 26, 2004, the Court granted in part and denied in part defendants' motion. The issues of Macke's willful infringement of the '592 patent, damages, and O'Rourke's personal liability for inducing infringement of the '592 patent were tried to the jury on October 5, 6, 7, 8, 12, and 13, 2004. On October 13, 2004, the jury returned its special verdicts. On the Special Verdict Form, the jury answered the questions below as follows:

> 1. Do you find that Mr. Wechsler has shown by a preponderance of evidence that Mr. O'Rourke is personally liable for infringement of the Wechsler patent?
>
> "YES" is a finding for Mr. Wechsler. "NO" is a finding for Mr. O'Rourke.
>
> YES_____    NO__X__
>
> 2. Do you find by clear and convincing evidence that Defendants have willfully infringed based upon Defendants becoming aware of the content of the Wechsler patent in 1997 through the meetings between Mr. Woods and Mr. O'Rourke and his representatives, and thereafter commencing sales of the original Handi-Drink?
>
> "YES" is a finding for Mr. Wechsler. "NO" is a finding for Mr. O'Rourke.
>
> YES_____    NO__X__

---

[1] The amended complaint added defendant Petsmart, Inc. All claims against defendant Petsmart, Inc., and Petsmart Inc.'s counterclaim against plaintiff were dismissed with prejudice on July 7, 2003.

3.  Do you find by clear and convincing evidence that Defendants have willfully infringed based upon Defendants becoming aware of the content of the Wechsler patent in April 1999 and then continuing to sell the original Handi-Drink?

"YES" is a finding for Mr. Wechsler. "NO" is a finding for Mr. O'Rourke.

YES __X__   NO_____

4.  What are the total damages owed to Mr. Wechsler for the infringement of the Wechsler patent?

LOST PROFITS:       $ __630,600__

REASONABLE ROYALTY: $ __25,535__

TOTAL:              $ __656,135__

On October 27, 2004, the Court entered an order of final judgment.[2] On November 12, 2004, plaintiff filed the present

---

[2] The Court's order of judgment decreed

1. That the manufacture, sale, offer to sell, use, and/or importation of the Handi-Drink 1 and "hinged" Handi-Drink 4 products infringe claims 1, 2, 3, 11, 12, 14, 18, 19 and 20 of the '592 Patent;

2. That claims 1, 2, 3, 11, 12, 14, 18, 19, and 20 of the '592 Patent are not invalid;

3. Plaintiff Lawrence I. Wechsler is owed the sum of $653,135 as compensatory damages for the infringement of the '592 patent, with interest thereon to be later determined by the Court; and

4. That determination of any award of enhanced damages under 35 U.S.C. § 284, attorney fees under 35 U.S.C. § 285, costs under Fed. R. Civ. P. 54(d)91), and the scope of an injunction against further infringement, shall be later made by the Court, upon motion.

Following an objection to the form of judgment by counsel for defendants, on November 1, 2004, the Court ordered plaintiff's counsel to lodge a proposed amended judgment, nunc pro tunc, that included the following language: "Defendant

motion for (1) enhanced damages under 35 U.S.C. § 284; (2) attorney fees under 35 U.S.C. § 285; (3) costs under F.R.C.P. 54(d)(1); and (4) prejudgment interest. The Court heard oral argument on December 13, 2004, and took the matter under submission.

## II. DISCUSSION

### A. Enhanced Damages

Plaintiff argues that he is entitled to enhanced damages under 35 U.S.C. § 284, based on the fact that the jury returned a finding of willful infringement and, as discussed below, the nine-factor test developed by the Federal Circuit in Read Corp. v. Portec, Inc., 970 F.2d 816 (Fed. Cir. 1992). Mot. at 1-3. Defendants respond that plaintiff is requesting the increased award as punishment, and that the basis of such an enhancement should be the "wanton disregard of the patentee's patent rights" or "egregiousness of the Defendants' conduct based on all the facts and circumstances." Opp. at 4-5. They argue that plaintiff cannot meet this standard, or the nine Read factors, in light of ample evidence that defendants acted on a good faith belief that they were not infringing the '592 patent. Id. at 5-6.

Under 35 U.S.C. § 284, the Court has discretion to increase up to three times the damages awarded by the jury. The Federal Circuit has developed a nine-factor test for determining whether and to what extent damages should be enhanced. Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992). These factors are: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) duration of the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. Id. These factors are not, however, exclusive: the "paramount determination" in considering enhancement is "the egregiousness

---

Anthony O'Rourke is not personally liable for infringement of the '592 Patent" and "Defendants have willfully infringed based upon becoming aware of the content of the Wechsler patent in April 1999 and then continuing to see the original Handi-Drink."

of the defendants' conduct based on all the facts and circumstances." Id. at 826.

1. Copying

Plaintiff acknowledges that he was unable to prove copying, and hence describes this factor as "neutral." Mot at 3. Defendants argue to the contrary that it is "an affirmative reason for denying increased damages." Opp. at 11.

The jury's verdict indicates that it did not find clear and convincing evidence of any knowledge of the '592 patent before defendants created and marketed the infringing product. Since no inference of copying can be drawn from these findings, the Court finds that this factor weighs against an award of enhanced damages.

2. Whether the Infringer Acted in Good Faith After Learning of the Patent

Plaintiff asserts that defendant O'Rourke, after learning of the '592 patent, acted in bad faith, in that he clearly believed his product infringed the patent yet continued to sell it anyway. Plaintiff points to (1) O'Rourke's instruction to his then-counsel, Richard Lyon, to investigate whether there was any uncited prior art that would render the '592 patent invalid; (2) O'Rourke's subsequent instruction to Lyon to inquire anonymously of Wechsler whether he would license the '592 patent; and (3) a letter from O'Rourke's present counsel, Conrad Solum, following plaintiff's refusal to grant O'Rourke a license, "discussing the possibility of changing the original Handi-Drink to avoid infringement"; (4) Solum's refusal to provide an opinion that the Handi-Drink did not infringe the '592 patent in a letter to O'Rourke discussing the Handi-Drink 2.[3] Mot. at 3-5 (citing 10/7/04 Trial Tr. at 69; 10/06/04 Trial Tr. at 23-24; Trial Exh's 53, 55) (emphasis deleted). Plaintiff also argues that O'Rourke's assertion that he did not believe the original Handi-Drink infringed the '592 patent was directly contradicted by both his own testimony and that of others at trial. Id. at 5-6. Specifically, plaintiff refers to O'Rourke's explanation that he continued to sell the original Handi-Drink after learning of the '592 patent because "[w]e had substantial orders from customers.

---

[3] The letter in fact states, "Although we do not conceed [sic] that your original Handi-Drink product infringes the Wechsler Patent or at least any valid claim therein, it seems prudent to consider a redesign that potentially could end the controversy." Trial Exh. 55 at 2.

We did not want to interrupt the flow to the customer," arguing that he "simply did not want to stop infringing because the infringing sales personally earned him a great deal of money." Id. (citing 10/7/04 Trial Tr. at 85-86).

Defendants respond that upon first learning of the '592 patent in April 1999, O'Rourke immediately requested Lyon to assess the validity of the patent and search for prior art. Opp. at 11 (citing 10/7/04 Trial Tr. at 65-68). Further, defendants cite evidence that O'Rourke evaluated the '592 patent, as well as other patents that he considered to be prior art, and formed a good faith belief that Macke was not infringing the '592 patent by manufacturing the Handi-Drink. Id. (citing 10/7/04 Trial Tr. at 67, 82-84).[4] Defendants also dispute plaintiff's characterization of the licensing negotiations — which they contend are in any case not related to this Read factor — and O'Rourke's testimony on why he continued to sell the Handi-Drink. They point out that O'Rourke testified that he "was not convinced at that time that there was an infringement issue" and that later, once the present litigation commenced, he "didn't think with all the doubts about the case that it was [a] wise move as a businessperson to shut everything down."

Given that the jury found clear and convincing evidence of willful infringement in defendants' continued sale of the infringing Handi-Drink from April 1999 onward, the Court finds that the infringement was in bad faith. Accordingly, this factor weighs in favor of an award of enhanced damages.

3. The Infringer's Behavior as Party to the Litigation

Plaintiff contends that throughout this "and related" litigation, defendants "have concealed evidence, pursued retaliatory claims, and misled the jury." Mot. at 7. The concealment of evidence is discussed in greater detail below, under the ninth factor. Plaintiff asserts that defendants sued him and his company, New Angle Pet Products, in retaliation for the present suit, and that all of defendants' claims have since been dismissed — most with prejudice. Id. As for misleading the jury, plaintiff asserts that defense counsel Richard Luskin (1) in his closing argument, claimed that inventor John Woods "gave Mr. Lyon a 3,000 page file" that contained only 2 references to the '592 patent, when the file was only slightly over 300 pages; (2) insinuated that overbilling clients "is an acceptable

---

[4] Plaintiff argues that the jury's finding of willful infringement "clearly" rejected "every assertion of good faith made by Defendants." Reply at 4.

practice"; and (3) lied in asserting that O'Rourke had only been involved in the instant litigation and litigation involving Woods "in his 25 year history in the pet industry," when he was fully aware of the two other lawsuits between the parties that were dismissed by the Court. Id. at 7-8.

Defendants respond that their behavior as a party to this litigation does not warrant enhanced damages. With regard to their allegedly retaliatory lawsuits, they challenge the propriety of considering these suits, which are not part of the trial record. Opp. at 13.[5] Defendants also assert that their claims were based on actions by plaintiff that defendants considered improper, and that they were only dismissed after a change in the law. Id.[6] As to defense counsel's supposedly objectionable behavior at trial, defendants state that the 300-page Woods file was in evidence as a trial exhibit and available to the jury during their deliberations, and that since Luskin's statements in closing are not evidence, they were harmless and do not rise to the level of "egregious conduct" that would justify enhanced damages. Id. at 13-14.

The Court finds that the lawsuits filed by defendants were filed in response to the present litigation. However, the Court does not believe that these suits were retaliatory. While the suits were ultimately dismissed, the dismissals were the result of the Federal Circuit's decision in Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367 (Fed. Cir. 2004). Nor does Luskin's closing argument amount to prejudicial trial behavior weighing in favor of enhancement.

---

[5] Plaintiff replies that under Read, the Court can consider facts not presented to the jury. Reply at 4 (citing Advanced Cardiovascular Sys., Inc., v. Medtronic, Inc., 265 F.3d 1294, 1311 (Fed. Cir. 2001) and SRI Int'l v. Advanced Tech. Lab., 127 F.3d 1462, 1469 (Fed. Cir. 1997)).

[6] Defendants additionally point out that "Plaintiff has sued Defendants twice in New York since the start of this litigation, which cases have been dismissed, and...has sued three customers of Macke in connection with the Handi-Drink products and coerced settlements of those suits based no those customers buying Plaintiff's product. Those five lawsuits are also not of record in this case but 'the pot should not be calling the kettle black' to further his interests." Opp. at 13.

4. The Infringer's Size and Financial Condition

Plaintiff asserts that "[d]efendants are a significant force in the pet products industry," citing O'Rourke's testimony at trial that approximately 1.5 to 1.75 million Handi-Drinks and 0.5 million Handi-Drink 4's have been sold overseas. Mot. at 8 (citing 10/7/04 Trial Tr. at 102). Plaintiff alleges that New Angle, by contrast, is a start-up business whose funding has been "severely" strapped by the present suit and additional litigation by defendants. Id. at 9.

Defendants respond that there is no evidence of record as to the size or financial condition of Macke or O'Rourke — notwithstanding O'Rourke's testimony as to the number of Handi-Drink products sold overseas, which "does not establish that either [defendant] have [sic] received and/or retained significant profits from those sales." Opp. at 14. Defendants point out that in his own motion for JMOL regarding the personal liability of O'Rourke, plaintiff presents evidence that Macke does not have sufficient assets to satisfy the original judgment. Id. Defendants also argue that the size and financial condition of plaintiff's company is irrelevant to the factor of defendants' size and financial condition. Id. at 14-15.

There being no evidence in the record to support any reliable inference of Macke's size or financial condition, the Court does not consider this factor in its analysis.

5. The Closeness of the Case

Plaintiff argues that in light of the facts already cited as to defendants' infringement and bad faith, as well as the fact that defendants "abandoned" their claim of invalidity at trial, the finding of willfulness was not close. Mot. at 9-10.

Defendants contest this assertion, referring to the Court's grant of summary judgment that the Handi-Drink did not infringe the '592 patent, though that decision was reversed on appeal. Opp. at 15. Defendants also rely on the jury's Special Verdict No. 1, which found O'Rourke not personally liable for infringement.[7] Defendants further allege that although they pursued their claim of invalidity in good faith, they were "forced" to abandon it at trial because their expert was not permitted to testify. Id. Defendants also dispute plaintiff's

---

[7] In a concurrently dated order, the Court has construed the jury's verdict as finding O'Rourke personally liable for inducing infringement of the '592 patent in 1999, but not in 1997.

assertion that there was "no credible evidence at trial to refute willfulness, referring to the evidence already cited of defendants' good faith efforts to license or purchase the '592 patent and to design a non-infringing alternative, as well as the fact that the original Handi-Drink "was designed over one year before learning of the '592 patent." Id. at 15-16.

The Court notes that defendants abandoned their suits against plaintiff only after a change in the law effected by Globetrotter. Further, defendants abandoned their defense of invalidity because the Court excluded the testimony of their expert. On balance, the Court finds that this was a close enough case to weigh against awarding enhanced damages.

### 6. Duration of the Infringement

Plaintiff asserts that defendants learned of the '592 patent "at least as early as" April 1999 and continued to infringe it willfully until "at least" June 2000, causing damage to plaintiff. Mot. at 10.

Defendants respond that negotiations between plaintiff and Lyon were ongoing through July 1999, and that from about September 1999, when plaintiff finally and definitively refused to grant a license, to April 2000, defendants redesigned the Handi-Drink and brought the non-infringing Handi-Drink 2 to market. They also assert that during the period from April 1999 to April 2000, there was "no court holding" that the Handi-Drink infringed the '592 patent, and argue that the duration factor in Read was based on Bott v. Four Star Corp., 229 U.S.P.Q. 241 (E.D. Mich. 1985), in which the damages were increased by 20% for infringement prior to the appellate court's affirmance of the finding of liability and doubled the damages for infringement thereafter. Id. at 16-17 (citing Bott, 229 U.S.P.Q. at 255).

The Court finds that the duration of the infringement was from September 1999, when plaintiff unambiguously refused to grant a license, to April 2000. This duration of infringement, coupled with the absence of any formal opinion offered by defendants' counsel that the Handi-Drink did not infringe the '592 patent supports an award of enhanced damages.

### 7. Remedial Action by the Infringer

Plaintiff argues that defendants' introduction of the non-infringing Handi-Drink 2 failed to remedy the infringement by the original Handi-Drink, in that defendants "deliberately continued to sell the infringing Handi-Drink...while they were developing a non-infringing version in order to retain their market position

by 'piggyback' sales of the less desirable Handi-Drink 2." Mot. at 10. Plaintiff also points to defendants' "leverage" of awards received for the Handi-Drink 1 to sell the Handi-Drink 2.

Defendants respond that whether the Handi-Drink 2 was "less desirable" is irrelevant to consideration of this factor. Opp. at 17. Defendants assert that defendants' attempt to obtain license or title to the '592 patent also constitute good faith remedial action, and that when plaintiff ultimately refused to grant them a license, they redesigned their product to create the Handi-Drink 2 and stopped selling the infringing Handi-Drink within seven months. Id.

The Court agrees that the proper issue for consideration is whether defendants attempted to take remedial action in the form of licensing or purchasing the '592 patent and designing a non-infringing substitute. The evidence indicates that defendants did take these measures. Their efficacy is not the dispositive issue. Accordingly, the Court finds that this factor weighs against enhancement of damages.

    8.    The Infringer's Motivation to Harm

Plaintiff contends that defendants' infringement was based solely on self-interest and benefited no one but themselves. Mot. at 10-11. Defendants argue that plaintiff misinterprets this Read factor, which is defendants' motivation for harm, not who benefited from the infringement. Opp. at 17. Defendants assert that they had no motivation to harm plaintiff, and that "if anything," they were "building a marketplace" for the type of product plaintiff ultimately introduced, in continuing to sell the Handi-Drink. Id. at 18.

Defendants may be presumed to have acted in their own self-interest in marketing their own products. That their actions included willful infringement, as found by the jury, has already been considered under the second factor relating to defendants' good faith belief regarding infringement and invalidity. There is nothing to suggest that defendants acted under any motivation to harm plaintiff. Cf. Maxwell v. Angel-Etts, 2001 U.S. Dist. LEXIS 25418 at *69-70 (C.D. Cal. 2001) (finding that defendant's "concealment, lies and duration of infringment all evidence an intent to harm" its competitor). The Court therefore finds that this factor does not weigh in favor of or against an award of enhanced damages.

9. **Whether the Infringer Attempted to Conceal the Infringement**

Plaintiff alleges that defendants concealed crucial evidence of infringement in this case. Specifically, plaintiff asserts that O'Rourke and his counsel withheld evidence of prior business dealings and litigation with John Woods, which plaintiff only discovered on its own. Mot. at 11. Plaintiff also cites testimony by O'Rourke and his counsel, later contradicted by testimony at trial, on who contributed to the design of the Handi-Drink; the number of pet watering devices with which O'Rourke had been "involved" before developing the Handi-Drink; when the Patent Examiner called Lyon about the '592 patent; and Woods's lawsuit against O'Rourke. Id. at 11-12.

Defendants argue that this Read factor is based on a case in which defendant failed to preserve its records and cooperate at trial on the issue of damages, which was not the situation here. Opp. at 18. Defendants assert that they never made any efforts to conceal evidence of the infringing sales, and that they voluntarily entered into licensing negotiations and voluntarily provided a design of the Handi-Drink 2. Id. at 18-19. They also contend that none of the evidence of the Woods litigation or meetings with O'Rourke had any relevance to the finding of infringement, as confirmed by the jury's Special Verdict No. 2. Id. at 19. Defendants further contend that none of the discovery issues raised by plaintiff amount to concealment of evidence, and charge plaintiff's discovery tactics as driven by an effort "to find some inconsistency in O'Rourke's testimony about irrelevant matters." Id.

The Court is mindful of the late-discovered identity of John Woods, but it is not persuaded that any of the evidence cited by plaintiff supports an inference that defendants attempted to conceal their infringement. This factor does not weigh in favor of enhancement.

On balance, the Court finds that defendants' conduct, based on the totality of the circumstances in this case, does not rise to the level of egregiousness that warrants an award of enhanced damages. Although enhanced awards have been upheld where infringement was willful, a finding of willful infringement does not mandate enhancement. Read Corp., 970 F.2d at 826. In the present case, the jury did not find that defendants infringed the '592 patent before 1999, and therefore did not find that defendants copied plaintiff's design. As discussed above, the Court does not find that defendants' behavior in litigation was in bad faith or that defendants attempted to conceal their infringement. Furthermore, the Court has also determined that

this was a close case, and that defendants undertook remedial action in designing the Handi-Drink 2. Accordingly, in light of these factors, the Court does not find enhancement of plaintiff's damages appropriate.

B. Attorneys' Fees

Plaintiff contends that he is entitled to reasonable attorneys' fees under 35 U.S.C. § 285, because he is the prevailing party and because the facts supporting the jury's finding of willful infringement render it an "exceptional case." Mot. at 13-14. Plaintiff notes that he does not seek any fees or costs attributable to litigation on the Handi-Drink 2 or fees attributable to work performed by the Wechsler & Wechsler law firm and that following resolution of the post-trial motions, he will provide a detailed accounting of fees. Id.

Defendants argue first that plaintiff is not entitled to attorneys' fees because he failed to provide any estimate of the amount of fees sought as required by Fed. R. Civ. P. 54(d)(2)(B). Opp. at 21.[8] Defendants further argue that this is not an "exceptional case" as defined by § 285, citing the court's discretion to deny attorney fees despite a jury finding of willful infringement. Defendants also refer to its prior discussion of the nine Read factors as weighing against an award of attorneys' fees. Id. at 21-23.

The Court has separately determined that the jury found that defendants did not willfully infringe the '592 patent in 1997, but that they did so in 1999. In light of this mixed outcome, the Court does not find that this was an "exceptional case" that warrants an award of attorneys' fees.

C. Fees

Plaintiff seeks costs, and notes that he will provide a detailed bill of costs, pursuant to Fed. R. Civ. P. 54 and L.R. 54, upon resolution of the post-trial motions. Mot. at 14.

---

[8] Plaintiff responds that when he filed the present motion, he did not yet know to what extent he was the prevailing party, and accordingly reserved the amount of fees and costs sought until that determination would be made. Reply at 10. However, in his reply he estimates his fees at approximately $459,055 and costs at $76,161. Id.

Defendants contend that plaintiff is not entitled to costs because he has failed to file and serve a bill of costs with a Notice of Application to the Clerk to Tax Costs within fifteen days of the entry of judgment, as required by L.R. 54-3. Opp. at 23-24. Defendants further contend that plaintiff is not the prevailing party as to O'Rourke, and therefore not entitled to any award of costs against O'Rourke. Id. at 24.

The Court finds that plaintiff's request for costs is inappropriate for the same reasons for which it denies the request for attorneys' fees.

### D. Prejudgment Interest

Plaintiff argues that he is also entitled to prejudgment interest on the damages award under § 284, as there is no justification for withholding such an award. Mot. at 15 (citing Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 657 (1983) and Latiram Corp. v. Cambridge Wire Cloth Co., 785 F.2d 292, 295-96 (Fed. Cir. 1986)). He further argues that the Court should award him interest at the prime rate compounded, and calculates the resulting interest at $45,549.70 at this time. Id. at 15-16; see also Declaration of Alan G. Goedde ("Goedde Decl.") ¶¶ 6-12 and Exh. 1. Plaintiff also asserts that interest should continue to accrue until the Court enters a final appealable order, and that should the Court award him prejudgment interest, he will propose, at a later date, "a supplemental interest amount to cover prejudgment and post-judgment interest." Id. at 16.

Defendants respond that plaintiff relies on the Goedde Declaration, which in turn is "based upon numerous assumptions that are not justified" and furthermore fails to take into account plaintiff's delays in pursuing this litigation — specifically, his filing suit in New York when he "knew or should have known" that there was no personal jurisdiction, his appealing the Court's summary judgment of non-infringement, and his obtaining a reopening of discovery in September 2003, as well as his pursuit of additional discovery related to the Woods matters. The Court does not find any of these tactics to be dilatory.

Devex and subsequent case law indicate that prejudgment interest should ordinarily be awarded in order to put the patentee in as good as a position as he would have been had the infringement not occurred. See Devex, 461 U.S. at 655-56 ("An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty

payments but also of the foregone use of the money between the time of infringement and the date of the judgment."). In this case, the damages were awarded on the basis of lost profits rather than reasonable royalties; however, the rationale remains the same. The Court may, under some circumstances, limit or deny prejudgment interest, such as "where the patent owner has been responsible for undue delay in prosecuting the lawsuit." In the present matter, however, the Court finds no factors or circumstances that justify the withholding of prejudgment interest. See id. at 657.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion is DENIED as to enhanced damages, attorneys' fees, and costs, and GRANTED as to prejudgment interest.

IT IS SO ORDERED.